Jackson, J.
This is not an action of assumpsit, but an action of trespass upon the case, founded on a supposed wrong committed by the proprietors of the bank, of whom the defendant was one. The acts complained of took place in the year 1813 ; and the plaintiff does not appear to have possessed any bills of the bank, or to have had any interest in their proceedings, until the year 1816. This was urged, on the argument, as decisive against the plaintiff’s right to recover in this action; and we do not see why it is not so.
This right of action, if there were any, accrued to those who held the bills at the time of the misconduct complained of; and such a right could not be assigned to the plaintiff. No injury was done to him by any misconduct of the stockholders of the bank; and he must have voluntarily incurred a risk when he took the bills. The holders of the bills at that time had their election to bring this action, if by law such an action could be maintained; or to sell the bills for as much as they were worth in the then state of the bank, after the value of the bills had been reduced by the conduct of the stockholders. In adopting the latter coursé, * they bear all the loss sustained by the supposed misconduct of the bank; and it would be contrary to equity, as well as to the settled principles of law, if the purchaser, in such a case, could recover on account of that misconduct. If the plaintiff was deceived in his purchase of these bills, he must resort, for recompense, to the person of whom he bought them. If he bought them fairly, we must suppose that he was informed of all the circumstances, or that he waived such information, or relied on his own knowledge of the facts; and that he paid no more than he thought them worth, considering the legal responsibility of the bank, and their means of making payment. This seems to have been a fair subject of speculation; and the plaintiff must abide by the result, wnether he gains or loses by the bargain. But if, in making the purchase, he intended to buy also a right of action against the stockholders, for a tort previously committed by them, his purpose was unlawful, and no such right of action was, or could have been. Assigned to him.
Although the opinion which has been expressed is decisive of *460 the present action, yet we have been led to consider the more general question presented in the case; and, considering the great number of persons interested in it, on the one side and the other, and the great amount of property involved in the issue, we have thought it proper to state our impressions on the general question. If these suggestions should lead to the adoption of any adequate remedy for the plaintiff, and those who are situated like him ; or, on the other hand, should show that our law furnishes no remedy, and thus prevent further trouble and expense to all parties concerned,— the result, in either case, will be useful to the community.
At the time when the capital stock of this bank was divided among the stockholders, it is obvious that the holders of their bills had a better right to the money. The stockholders owned nothing but the residue of the capital, after payment of all the debts of the bank. As honest men, they could not claim any more ; and we find, accordingly, * that they did not claim any more. At the time of those dividends, they left in the bank what they believed to be sufficient to discharge all its debts. But the event proved that they were mistaken in that opinion ; and the plaintiff contends that it was gross negligence and misconduct in them to divide any part of their capital, until it was made cer tain that none of their creditors would suffer by it.
There is no evidence to support a charge of fraudulent or dis honest intentions on the part of the defendant and the other stockholders ; and the plaintiff’s counsel, on the argument, did not attempt to put the cause on that ground. But they contended that the money, thus received by the defendant by mistake, and by a mistake of his own too, ought not to be retained whilst the plaintiff’s debt remained unpaid.
It is impossible not to see and admit the justice of this claim, at least as between the stockholders, who received the dividend, and those who then held their bills.
On the other hand, it is evident that the stockholders are not liable to an action on account of a mistaken opinion, or vote, expressed or given at a legal meeting. If they are liable at all, it is for having received money which did not properly belong to them, and which, therefore, they ought, in justice and equity, to refund. If there is any one of the stockholders who has not yet received his dividend, it will not be pretended that he is liable to any action, — even if it should be proved that he was present at the meetings, and voted for the dividends, upon a mistaken opinion that the stockholders had a right to divide the capital, and that no person would suffer from it. To support such an action against an individual, on account of his vote, or other like act done by him as a member of a *461 corporation, it is not enough to show that he acted erroneously or by mistake, but it must appear that he acted wilfully and maliciously, or fraudulently, with intent to injure the plaintiff. This was the point decided in the case of Harman vs. Tappenden. (11) If the stockholders of a bank, whilst their charter is in * force, and their bills in free circulation, should suddenly determine to divide and withdraw their capital; and if the funds left in the bank should be insufficient to pay their debts ; it would appear impossible to reconcile their conduct with honesty and good faith; and if so, the stockholders would probably be liable to all persons injured by the measure, upon the principle of the case cited. If any number of persons combine, with intent to injure and defraud another, they cannot defend themselves against an action by showing that they did the act in the character of corporators, under any charter whatever.
In the case at bar, the original charter of the bank had expired, three months before the first, and twelve months before the second dividend. The corporation was, indeed, continued in existence, with other banks alike circumstanced, for four years longer, by the statute of 1812, c. 57. But they were prohibited, under severe penalties, from transacting any business from which they could derive a profit; their capital was to be wholly unproductive, so long as it remained in the bank; and the express purpose, for which their existence was continued, was to enable them to settle and close their concerns, and to divide their stock. Under these circumstances, it could not have been intended, or expected, that they should keep their capital thus unemployed longer than should appear absolutely necessary. Every holder of their bills must have known, or was bound to know, this state of facts. No new bills could be issued ; and the bank was open merely for the purpose of paying all that were in circulation. A prudent, man would probably have demanded his payment before the expiration of the original charter; but every one must have known, from the terms of the additional act referred to, that the bills were no longer intended as a currency in the country ; and that, after the passing of that act, there was no time to lose in presenting them for payment. It would even have been unjust in a holder of their bills, if he could have done it, to keep them in circulation, and thus compel the stockholders to * leave their capital unemployed for four years, in order to ascertain whether they could divide it without loss to the community. There is then, perhaps, as much reason to impute negligence or misconduct to the *462 holders of the bills as to the stockholders. If the former had presented the bills for payment in proper season, the stockholders could not have been misled as to their right to make a dividend ; because the money in their vaults would have been exhausted in paying the bills, and nothing would have been left but the outstanding debts, which afterwards proved to be of little or no value.
This state of things has probably arisen from the opinion, which ;las been too prevalent in the community, that bank notes are money. They have been considered as the coin and common currency of the country, issued under the authority of the government; and it seems to have been thought that the government had taken sufficient care, in permitting their circulation, to prevent any injury or ass to the people. The government has, indeed, repeatedly adopted measures for this purpose, and probably has done all that was pas sible for the security of the public. But it is not possible, by any act of legislation, to make the directors of forty or fifty banks all equally skilful and prudent, and to make all their officers honest, and all their debtors solvent. It -is upon circumstances like these that the value of a bank note depends ; and if the affairs of any bank are unskilfully or dishonestly conducted, the best, if not the only, security that the people can have, is to refuse to accept their bills. Every holder of a bank note ought to understand that he holds only the promise of an individual to pay him the sum expressed in it. That individual is a corporation ; a creature of the legislature. It may die, or become insolvent, like any other person. The time of its dissolution is, indeed, known beforehand, and this is an advantage to its creditors, if they would avail themselves of it. But those creditors ought to know that, under all these circumstances, they must rely upon their own judgments as to the banks * to which they shall trust, and upon their own vigilance in obtaining payment of their debts, as they io in their negotiations with other individuals.
This delay, or negligence, on the part of the creditors of the banks, although it may, in some measure, excuse the negligence or mistakes of the stockholders, is not, however, such as ought to bar the just and legal claims of the creditors. But, in attempting to do justice to them, we must not forget the rights of the stockholders. If the present action could be maintained, as for a tort, several consequences would follow which every one would admit to be highly unreasonable and unjust. In the first place, any one of the stockholders might be sued alone ; because, in an action founded on tort, it is not necessary to join all the wrongdoers ; and the defendant cannot, in such a case, plead the omission of the others in ibatement. Secondly, the individual who was sued would be liable *463 to the whole extent of the injury complained of, without regard to the amount which he had received on the division of the stock. If a man has done me an injury, for which I bring an action of this kind, it is no defence for him to say that he has not been enriched by it. The same stockholder would, therefore, be liable to successive actions of the same kind, by all the different holders of the bank notes; and the defendant in the case at bar, although he received less than 1200 dollars on the division of the capital stock, might be compelled, if he has estate sufficient, to pay the whole of the notes, for 90,000 dollars and upwards, which ose said to be still unpaid. Thirdly, if any thing could make this more strikingly unjust, it is the circumstance that the defendant, after paying all that money, could have no"remedy for contribution against the other stockholders. No such action will lie by one trespasser or wrongdoer against his companions ; but either one may, at the election of the injured party, be made liable for the whole.
If these views are correct, as to the rights of the creditors of the bank, and the obligation of the stockholders, it * follows that the creditors ought to be paid out of the funds which were withdrawn from the bank in 1813; and, on the other hand, that no stockholder ought to pay more than he received on that occasion.

This is one of the numerous cases, which are constantly occurring, which show the necessity of a court of chancery for the complete distribution of justice among the people. It is the boast of the common law, that it permits no wrong without furnishing a remedy ; but this is true only when there are courts competent to exercise all the judicial powers which that law requires for its due administration. A court of chancery exercises a most important part of those judicial powers. Its duty is, not to establish new rules, unknown to the common law, for the conduct of the people, or the regulation of their property; but to apply and enforce those principles of the common law which cannot be enforced by the other courts.

In the case of this bank, a court of chancery would probably sustain a bill, by one or more of the creditors of the bank, in behalf of all who should choose to come in, against all the stockholders. In such a process, new plaintiffs and new defendants might be added after the commencement of the suit, as might be found necessary ; and the rights of all concerned on both sides might be considered at once. It could then be ascertained how much was due, in the whole, to all who should choose to adopt this remedy, and what had been received by each stockholder. The latter might then be compelled to pay each one his proportion of the vt hole debt, provided it did not exceed the amount of his dividend; and *464 the money thus paid might be divided among the plaintiffs, in proportion to their respective claims. If any of the stockholders had become insolvent, it would be determined, upon the same principles as in a like case in a court of common law, whether the loss arising from that circumstance should be borne by the stockholders or by
by
the creditors ; and this point being settled, the court of chancery would proceed to apportion the *loss, accordingly, among the respective parties. It might also be ascertained, whether any of the present holders of the bills had purchased them at a great discount, and at a late period: and if this circumstance ought to have any influence in estimating the amount of the debt, or in distributing the money to be paid by the defendants, that court would be competent to make the distribution accordingly. This appears to be the appropriate remedy, if not the only one, which the law furnishes in the present case.
If the creditors of the bank can devise any action by which this Court can arrive at a similar result, and can do justice to them without injustice to the stockholders, it will be our duty, and no unpleasant exercise of our authority, to do so. If no such mode can be de vised, the loss which the plaintiff will sustain is not perhaps to be attributed to any defect in the principles of our jurisprudence, but to the want of a tribunal competent to give effect to those nrinciples.
Per Curiam. The motion to set aside the nonsuit is overruled

 1 East, 555.