MANN, receiver of The Canajoharie and Catskill Railroad Company, *vs,* PENTZ.

A creditor of a railroad corporation recovered judgment at law, issued execution, had it returned unsatisfied, and filed his bill in chancery under section thirty-six of the statute relating to " proceedings against corporations in equity," (2 *R. S.* 463,) for a sequestration of the effects of the corporation and the appointment of a receiver. The receiver appointed in that suit then instituted a suit in equity against a stockholder to recover the unpaid balance of his subscription. The stockholder sued had paid all the calls made by the corporation, pursuant to the terms of his subscription, and other stockholders who had not paid their subscriptions were not made parties. *Held*, that the bill could not be sustained.

A receiver appointed under that section of the statute, it seems, has no greater or other powers than receivers in ordinary creditors' suits. The forty-second section of the same statute, declaring the powers of receivers, relates only to such as are appointed in suits commenced under section *thirty-nine* against moneyed corporations, and not to those appointed under section *thirty-six.*

A corporation, it seems, is not necessarily dissolved by proceedings instituted under section thirty-six, after the return of an execution at law.

Where the return of an execution at law unsatisfied is the ground of proceeding against a corporation according to section thirty-six, and the effects of the corporation are not sufficient to pay the debts, the creditor may resort to equity to recover the unpaid subscriptions to the capital stock.

But in such a case each shareholder is liable only in due proportion with the oth-

ers, and the bill should be filed by the *creditor* in behalf of all the creditors against the corporation, and all the shareholders who have not paid up their subscriptions, so that an account may be taken of the debts and assets of the corporation, of the amount of capital not paid in, and the sum due from each shareholder.

Where the rights of creditors are not in question an action will not lie against a subscriber to the capital stock of a corporation to recover his subscription or any part thereof, until he is in default after regular calls upon him pursuant to the charter.

THE Canajoharie and Catskill Railroad Company was incorporated by act of the legislature passed April 19, 1830, with a capital of $600,000, divided into shares of $50 each.   Another act, passed in 1837, authorized the capital to be increased to $1,000,000.   The defendant Pentz was an original subscriber for fifty shares, and paid all the calls made upon him by the company and seven per cent in addition, leaving unpaid, and not called for, upon his subscription, fourteen dollars on each share, or $700 in all..

In May, 1842, A. Van Vechten, a creditor of the corporation, who had obtained a judgment at law and issued an execution thereon which was returned unsatisfied, filed a bill in the court of chancery against the company, under the 36th section of the statute entitled "of proceedings against corporations in equity," (2 *R. S.* 463,) for a sequestration of its property and effects, and for the appointment of a receiver.   On the 9th of December, 1842, an order for a sequestration was made in that suit, and a receiver directed to be appointed, to whom, when appointed, the order required the company and its officers to assign all its effects.   On the 9th of January, 1843, in pursuance of that order the complainant was duly appointed such receiver.

In August, 1843, the receiver filed the bill in this cause setting forth the above facts, and stating that the corporation was owing debts to the amount of several thousand dollars; and that with all the assets on hand, there was not sufficient due from solvent stockholders on their unpaid shares to discharge such debts.   The proof, however, did not appear to sustain the latter allegation.   The bill prayed that the defendant might be decreed to pay to the complainant, as such receiver, the balance

Mann v. Pentz.

still remaining unpaid on his shares of stock, with interest and costs of suit, and for general relief.

The answer of the defendant stated (and so the fact appeared to be) that several of the stockholders had not paid as much on their shares as the defendant had paid, and that if all who were able to pay were made to do so there would be a balance coming to the defendant on what he had already paid. It also alledged that Van Vechten was a stockholder who had not paid on his shares, and that all the stockholders were necessary parties to the suit.

The assistant vice chancellor of the first circuit, before whom the cause was heard on pleadings and proofs, pronounced a decision in favor of the complainant according to the prayer of the bill. (See 2 Sandf. Ch. R. 257.) His decree was affirmed on appeal by the supreme court sitting in the first district. The defendant appealed to this court.

S. Sherwood, for appellant. I. The plaintiff having no title but as a receiver at common law, can only recover the debts and effects of the company, no power having been given him beyond the proceeding under the 36th section of article 2, title " Proceedings against corporations in equity." (Verplank v. Mercantile Ins. Co., 2 Paige, 452.) The plaintiff is not a receiver to wind up the affairs of the company under the 41st section, nor under section 66 or 69, and has none of the statute power to sue at law or in equity, to make calls and collect balances not previously due. If the receiver had any remedy against each stockholder separately, it must have been by an action at law, no equitable right being stated against this defendant. (Penniman v. Briggs, Hop. 305.)

II. The stockholders, as such, are not indebted to the company until a call is made upon all equally ; their agreement is to pay when called upon as stockholders, and such call is a prerequisite to liability. The only equitable remedy which the receiver could enforce, would be by a bill against all the stockholders, compelling equality of payment.

III. Sixty-five per cent only was called or required by the

Vol. III.          53

company, which was promptly paid by the defendant; the arrearages of the 65 per cent by solvent stockholders would be sufficient to pay the *debts* due by the company, and should be collected before resorting to those not in default.

IV. The receiver, under the 36th section, is a receiver at common law, appointed on *no other proof* of insolvency than an execution *returned nulla bona;* and *his powers,* as *receiver,* are *not defined* by the statute, but left as at common law. The receiver in case of moneyed corporations is appointed, in case of *insolvency,* &c. by creditors or stockholders, in a particular manner detailed in sections 39, 40, 41 and 42, and his powers are defined and extended; to such receiver is given *all* the powers, &c. as "in the case of a voluntary dissolution of a corporation," which are specified from section 66 to section 71, among which is the power of collecting balance of stock.

V. While the 36th and 37th sections leave the powers of the receiver, as to collection, *as at common law,* yet they require the moneys obtained to be distributed as "in case of voluntary dissolution." Hence the plaintiff is receiver, not by *proof of insolvency,* nor to wind up the affairs of the company, but with the common law power of collecting debts, &c. distributing such collections among all the creditors who prove their claims.

VI. The judgment of the courts below ought to be reversed, and the bill dismissed with costs.

*J. Van Vleck,* for respondent,

PRATT, J. The first and most important question in this case is that which relates to the construction of the forty-second section of the article of the revised statutes entitled "Of proceedings against corporations in equity." (2 *R. S.* 464.) If that section applies to receivers appointed under the thirty-sixth section of the same article, it was conceded by counsel upon both sides that the bill in this suit could be sustained. Without admitting or denying the correctness of this assumption, upon a careful examination of the different sections of the statute in

question, I am satisfied that the forty-second section will bear no such construction.

First. The learned vice chancellor assumed that the necessary effect of proceedings under the thirty-sixth and thirty-seventh sections would be to dissolve the corporations against which such proceedings were had, and to wind up their affairs. I do not so construe the objects which the legislature had in view. It is true that such proceedings might in many cases eventually have that effect; but in other cases no such effect might be produced. The property and effects of many kinds of corporations are so indispensable to their power to do business, that a sequestration of such property would necessarily suspend the exercise of their corporate powers, and prevent them from going on with their ordinary business, and yet there are other corporations upon which it might have no such disastrous effect. A judgment might be obtained against a manufacturing corporation and an execution be returned nulla bona, and yet the assets of the company be ample to pay all the debts. In such case a sequestration of such assets would not necessarily affect the corporate franchises, although it might interrupt or suspend its ordinary business. It is, therefore, my opinion that the object of the legislature by the thirty-sixth and thirty-seventh sections was simply to provide a summary mode of compelling the application of the property of a corporation which had allowed an execution to be returned against it unsatisfied, to the payment of all its debts; from the fact that the property of the corporation was the only security for its debts, and a sequestration of such property might eventually result in a dissolution of the corporation; and as there was no individual responsibility against the corporators for the security of creditors, the statute provided for an equal distribution of the property among all the creditors, instead of applying it to the payment of the particular creditor whose execution had been returned unsatisfied. If a surplus should be left after satisfying all the debts, it is quite clear that it should be paid over to the corporation by the receiver. But if the construction of the court below be correct, the surplus, if any, should be distributed among the members

of the company. Again, it is clear from the provisions of the thirty-eighth section, that the legislature did not contemplate that proceedings under the two previous sections would necessarily dissolve the corporation. By this section it is necessary that corporations should remain insolvent a whole year, or for that time should have neglected to pay their debts, or suspended their ordinary business, before they are liable to be dissolved. The provisions of this section are utterly inconsistent with the assumption that a corporation should necessarily be dissolved by proceedings under the previous sections. These proceedings might cause a suspension of business which might render the corporation liable to be dissolved under the provisions of the thirty-eighth section ; but such consequences by no means necessarily follow.

But with the 39th section commence provisions which apply to proceedings against a particular class of corporations. These provisions are continued down to and including section 50. They apply to moneyed corporations, a class of corporations whose entire power and capacity to do business depend upon their solvency. There are therefore obvious reasons why the legislature should provide for winding them up the moment they should become insolvent. Section 39 therefore provides, among other things, that when one of this class of corporations shall become insolvent or unable to pay its debts, the court of chancery may restrain it by injunction from exercising its corporate rights, privileges or franchises. Section 40 directs upon whose application and upon what proof such injunction may issue; and section 41 provides for the appointment, in any stage of the proceedings, of a receiver to take charge of the property and effects and to sue for and collect the debts and demands. Section 42 refers to a subsequent article for a full definition of the powers of such receiver. Its language is, " *such* receiver shall possess all the powers and authority conferred and be subject to all the obligations and duties imposed in article third of this title upon receivers appointed in case of the voluntary dissolution of a corporation." The remaining sections down to and including section 50 apply to proceedings against the same class

of corporations, but they contain special provisions for enforcing the liability incurred by directors and stockholders under title 2, chapter 18, part 1 of the revised statutes. (1 *R. S.* 588.) This title refers. exclusively to moneyed corporations, and the revisers in their notes say, that the sections from 42 to 51 were framed to enforce such liability. (*Revisers' Notes,* 3 *R. S.* 755, 2*d ed.*) But from the sections themselves it is evident they all refer to the same subject matter, and it is only by a very forced construction that section 42 can be taken from the sections with which it is connected and made to apply to receivers appointed under section 36. Such construction is clearly not authorized by the language of the several sections, nor by the position as to each other in which they are placed; nor is such construction required by any known mischief which the legislature intended to remedy by passing the statute.

This was the interpretation, which the late chancellor put upon these sections in the case of *Verplank* v. *The Mercantile Ins. Co.* (2 *Paige,* 438,) and there is nothing in the case of *Nathan, receiver,* v. *Whitlock,* (9 *id.* 152,) which conflicts with the opinion expressed by him in the former case. The latter was the case of a moneyed corporation admitted on all sides to be insolvent. Besides, the chancellor held the contract by which Whitlock claimed to be discharged from his indebtedness void, as against the company. It was therefore simply the case of a receiver commencing a suit to enforce the collection of a debt due to the company.

*In the Matter of the Franklin Bank,* (1 *Paige,* 85,) and *Attorney General* v. *Bank of Commerce,* (*id.* 511,) were also cases of moneyed corporations, but in those cases no other powers were exercised than simply to take charge of the property and effects of the corporations and distribute them among their creditors. They acted under the act of 1825, and there is nothing in that act which required a dissolution and entire winding up of a corporation upon the return of an execution unsatisfied against it. (*Sess. Laws of* 1825, *p.* 450.) I am therefore, satisfied that if this bill can be sustained, it must be by virtue of some power which the receiver possesses independent of section 42.

The question then arises, can the plaintiff as receiver with the powers conferred by the 36 and 37 sections, maintain this suit? Simply as representing the corporation it is quite clear that he can not. There is no express promise to pay in the subscription of the defendant: the only condition upon which he could have been made liable to the corporation, was by regular calls made in pursuance of the charter. The defendant had paid up all the regular calls made upon him, and he was not therefore liable to the company, and the receiver, as representing it, can not maintain this suit.

It does not follow, however, that the creditors have no remedy against stockholders who have not paid up their subscription. The capital stock of a corporation is a trust fund for the security of its creditors. (*Case* v. *Grant*, 15 *Mass.* 505 ; *Spear* v. *Grant*, 16 *id.* 92 ; *Wood* v. *Dummer*, 3 *Mason*, 308; *Nathan* v. *Whitlock*, 9 *Paige*, 152.) In these cases the corporations had attempted to distribute their stock among their stockholders, leaving debts against the corporations unpaid, and it was held that creditors in proper suits might compel such stockholders to refund sufficient to pay those debts. Upon the same principle, when the stock has not all been paid in, the delinquent stockholders should be compelled to contribute from the unpaid subscriptions sufficient to pay such debts. Such unpaid balance should be deemed for this purpose a portion of the capital stock. It is therefore in accordance with this obvious principle of equity that our revised statutes have expressly provided, that "When the whole capital stock of a corporation has not been paid in, and the capital paid shall be insufficient to satisfy the claims of its creditors, each stockholder shall be bound to pay on each share held by him the sum necessary to complete the amount due on such share, as fixed by the charter of the company, or such proportion of that sum as shall be required to satisfy the debts of the company." (1 *R. S.* 600, § 5 ; *Revisers' Notes*, 3 *id.* 531.) The liability is therefore clear, but how is it to be enforced? The statute itself does not define the method to be pursued, but leaves the remedy to be enforced by such practice and in such form as the nature of the right to be asserted and

the relief sought may require. It being a statute liability, if the receiver can select one stockholder and collect the whole amount unpaid upon his shares of the stock, there is no reason why his remedy is not as perfect at law as in equity. But the nature of the right to be enforced and the circumstances under which it is to be enforced render the proceedings under this statute eminently proper for a court of equity, and the practice should be such as to effect the equitable designs of the statute and not be unnecessarily oppressive upon those against whom the proceedings are directed. This liability is only incurred when the capital paid in is not sufficient to satisfy the debts against the corporation, and then only to an amount sufficient to satisfy such debts. It is, therefore, necessary that an account of the assets and of the debts should be taken, of the amount of the capital remaining unpaid upon the shares, and the amount unpaid by each stockholder, in order that they may be made equally liable. I can see no way in which this could be effected under the practice before the code, except by a bill filed in behalf of all the creditors against the corporation, making the delinquent stockholders also defendants. The court would then have the power to do complete justice and make each delinquent stockholder pay his due proportion and no more. This is the practice established by the revised statutes, to enforce a liability somewhat analogous against directors and stockholders of moneyed corporations, (2 *R. S.* 464,) and the same practice is suggested by Judge Jackson, in *Case* v. *Grant*, and by Judge Story, in *Wood* v. *Dummer*, (*supra.*) The creditor therefore who filed the original bill against the railroad corporation, when he found that the property of the company was not sufficient to pay all the debts, should have amended his bill and made the delinquent shareholders parties to the original bill. The receiver had no power as such to file this bill. There is nothing in the original bill nor in the order appointing the receiver, which indicates that it was the object of that suit that the receiver should have any other or greater powers than receivers in ordinary creditors' suits.

The decree of the supreme court and of the assistant vice chancellor must therefore be reversed, and the bill dismissed with costs, in the courts below.

Ordered accordingly.