## NEW ORLEANS GAS LIGHT COMPANY *v.* B. BENNETT.

Where an insolvent corporation is in the hands of a liquidator or receiver, it is proper that suits against the stockholders for contributions on arrearages of stock to pay debts of the corporation, should be conducted by the person thus vested with the powers of the corporation, and not by individual creditors of the corporation.

APPEAL from the District Court of East Feliciana, *Stirling, J.* *E. T. Mer-* N. O. GAS
rick, for plaintiffs. *Hardee* and *Bowman*, for defendant. *Z. S. Lyons*, for LIGHT COMP'Y
the State. The judgment of the court was pronounced by BENNETT.

ROST, J. The plaintiffs are the holders of a large portion of the bonds issued by the Clinton and Port Hudson Railroad Company, and secured by stock mortgages. The company being insolvent, and its charter having been declared forfeited by a decree of court, they claim from the defendant the entire amount of the stock for which he subscribed; and pray that the property mortgaged by him to secure it be subjected to their claim.

The district attorney in behalf of the State, and the liquidator appointed under a law of the State to settle the affairs of the company, have intervened; both averring the indebtedness of the defendant, and claiming the right to recover the amount of his subscription by preference to the plaintiffs. The judge of the district court dismissed the intervenors, and gave judgment in favor of the plaintiffs, as prayed for. The defendant and the intervenors have appealed.

We will first dispose of the claim in intervention. By the original act of incorporation, the capital of the Port Hudson and Clinton Railroad Company was fixed at $100,000; and the board of directors were authorized to increase it to $200,000. By an amendment of the charter, passed in 1834, banking privileges were conferred upon the company, and its capital was increased to $500,000, one-half of which was to be raised by subscription for stock in the usual way, and the other half by loans to be effected on the bonds of the company; the payment of these bonds, and of the interest which would accrue on them, was to be secured by mortgages given by the stockholders upon immovable property and slaves to the aggregate amount of $300,000. The bonds to be issued by the company were to bear interest at the rate of five per cent per annum, payable half-yearly: $75,000 of said bonds were to fall due in eight years; $75,000 in fifteen years, and $100,000 in twenty years from that date.

In 1836, the bonds of the company being still unsold, they made a conditional contract with the Gas Light and Banking Company, by which the latter agreed to purchase the entire amount of their bonds at par, and to lend them $100,000, at the rate of six per cent per annum, provided the Legislature would pass an act to exempt them from the obligation imposed by their charter to establish a branch at Port Hudson. This act was passed by the Legislature, and the Clinton and Port Hudson Railroad Company issued their bonds, bearing six per cent interest, for $100,000, and also bonds for $250,000, bearing five per cent interest, under their charter. These bonds were all taken at par by the Gas Light and Banking Company. The first series for $75,000 fell due the 1st of February, 1844, and the second series on the 1st February, 1851; the remainder will fall due on the 1st of February, 1856.

On the 6th of February, 1836, the defendant and his wife executed their mortgage by notarial act to secure the thirty-six shares of stock, for the amount of which he is now sued.

All the bonds sued upon were originally received by the Gas Light and Banking Company under their contract; and no doubt can exist that, when the Legislature sanctioned it, it was in contemplation of all parties that the bonds were pledged to that company to secure the loan, by the dispositions of the act of 1834.

In 1837, the capital of the Clinton and Port Hudson Railroad Company was further increased to one million of dollars; the additional amount to be obtained by loans on their bonds, which bonds were also to be secured by new stock mort-

gages. The new stock was nearly all taken, and mortgages given to secure it. But a loan could not be effected upon those securities; and finally, in 1839, the Legislature passed, by a constitutional majority, notwithstanding the veto of the governor, an act under which the bonds of the State were issued to the company for $500,000. By this act the company were to pledge to the State their capital stock, and give a subrogation to all the mortgages which had been executed in its favor by all the stockholders, both under the original and amended charter, being, says the act, $750,000 in amount.

The intervenors claim the preference in behalf of the State, under this act. Exceptions have been taken to their capacity to appear in behalf of the State, without express authority. But we deem it unnecessary to pass upon them, being satisfied that the holders of the bonds are entitled to be paid by preference out of the stock mortgages.

The sixth section of the act of 1834, provides, that, to secure the payment of the capital and interest of the bonds, the stockholders shall be bound to give mortgages to the satisfaction of the president and directors of the company. Acts of 1834, p. 117. This section, if it has any meaning, pledges the stock mortgages for the redemption of bonds and the payment of interest by preference to all other debts of the company; being, in a legal point of view, a part of the contract sanctioned by the Legislature under which the Gas Light and Banking Company acquired the bonds, it was unnecessary to refer to it in the act of 1836; and the omission to do so cannot impair the rights of the plaintiffs.

It is said that the stock mortgage in this case could not have been one of those given in pledge; because it was executed after the passage of the act of 1836, and after the bonds had been made by the company and delivered to the Gas Bank. By a reference to the fourth section of the act of 1834, it will be perceived, that the books of subscription for the stock to be secured by mortgage were to be opened immediately after the promulgation of the act, and to be kept open for the two ensuing months; at the end of which time they were to be closed, and the largest subscriptions reduced, if the aggregate amount exceeded $300,000; and if all the stock had not been subscribed at the time of closing the books, they were to be re-opened on the first Monday of June following, and to remain open until the entire amount was subscribed.

Under this provision the books were kept open till 1836, when the defendant and his wife became stockholders, and gave the mortgage required. Under those circumstances, the date of the mortgage is quite immaterial. It is sufficient that the stock subscribed by the defendant and his wife formed part of the subscription under the act of 1834: that act makes no distinction between the stock taken before its promulgation, and that which was subscribed afterwards.

We are of opinion that, under the contract between the Gas Light and Banking Company and the Clinton and Port Hudson Railroad Company, the right of pledge in those mortgages vested in the Gas Light and Banking Company, and that it could not be taken away from them by subsequent legislation. The act of 1839 must therefore be restricted in its operation to the stock subscribed under the act of 1837, and the intervention in behalf of the State was properly dismissed.

The defendant excepted to the petition on the following ground: That if he is at all indebted on his stock mortgage, it is to the Clinton and Port Hudson Railroad Company; that the said company is now in liquidation, and the liquidator appointed to represent it is alone authorized to claim from him.

This exception was overruled by the district court; and the counsel for the plaintiffs places the correctness of the ruling on the ground that it clearly results

from the decisions of this court in the cases of *Meeker* v. *The Clinton and Port Hudson Railroad Company*, 2d Ann. 973, and *Langfitt* and *Perry* v. *Brown*, 5th Ann. 232, that the bondholders alone have the right to enforce the stock mortgages.

<div style="text-align:right">N. O. Gas<br>Light Comp'y<br>v.<br>Bennett</div>

These decisions had exclusive reference to stock pledged to the State, and rested upon peculiar legislation. They are not applicable to a case in which the subscription and the mortgage given to secure it have become the collateral security of an individual creditor. Our observation in the case of *Langfitt* and *Perry* v. *Brown*, that the holder of the stock mortgage, whoever he be, must take precedence of the mortgage given on the same property to secure a loan, does not imply the want of power in the liquidator to collect the fund out of which the payment is to be made. He is vested by law with all the powers of the syndics of insolvent estates; and we have no doubt that the intention of the Legislature in appointing him was, that he should do all acts necessary to the final liquidation of the company, so that the stockholders should not be harrassed and their substance wasted by separate suits with the creditors.

In cases where joint stock companies have been dissolved and are unrepresented, courts of equity will sustain a bill by one or more of the creditors in behalf of all who choose to come in against all the stockholders. In this action each stockholder is compelled to pay his proportion of the whole debt, provided it does not exceed the amount of his unpaid subscription for stock; and the money thus paid is divided among the creditors in proportion to their respective claims. *Vose* v. *Grant*, 15 Mass. R. 505. Angell and Ames on Corporations, 540.

It has also been held in such cases, that where parties are so numerous that it is either impracticable or inconvenient to bring all before the court, the purposes of justice would or might be defeated by requiring their presence; and a court of chancery will make such a decree as it can without them. The leading case in which this principle was recognized is that of *Wood et al* v. *Drummer et al*. 3 Mason, 388. In that case the available assets of the company had been distributed among the shareholders as dividends of stock, and the company had been dissolved without provision being made for the payment of its debts. Some of the creditors sued part of the shareholders, alleging a fraudulent division of the capital stock to their prejudice. The exception was taken, as it has been in this case, that no action could be maintained against any of the shareholders until they were all in court. That exception was overruled, on the ground that it would be extremely inconvenient, if not impracticable, to make them all parties, and the court proceeded to decide the case on its merits. But even in such a case, Judge Story, who presided, did not feel himself authorized to give judgment against each of the defendants for the entire dividends of stock received by them; and, to save the rights of other creditors, only adjudged them to pay out of those dividends so much of the debts due to the plaintiffs as the number of shares held by them in the capital stock bore to the whole number of shares of said stock.

Under the equity powers vested in this court, the liability of shareholders to creditors on account of unpaid stock was recognized by our predecessors in the case of *Cucullu* v. *Union Insurance Company*, 2 R. R. 577; and again, by this court, in the case of *Brown* against same defendants. 3d Ann. 177. In these cases the company had ceased to exist, and had had for years neither a known place of business, nor directors or other officers; and the action against the shareholders was maintained, as a last resort, and the only means of preventing a denial of justice.

N. O. GAS
LIGHT COMP'Y
v.
BENNETT.

But it is to be observed, that the liability of shareholders results from a contract entered into by them with the company ; and that whenever the company or its assets are under the management of proper officers, acting in a corporate capacity, that contract should, on principle, be enforced through those officers. In all cases of insolvency the interest of the mass should govern ; and it is manifestly for the common advantage of the creditors that their equities should be worked out through the corporation. If its legal representatives neglect to call in the debts due by the shareholders for stock, so as to enable the company to pay its debts, a creditor can compel them to enforce contribution from the shareholders according to their subscription. Angell and Ames on Corporations, 540, 544.

In furtherance of this view of the law, in the late case of *Theodore O. Stark*, 5th Ann. 740, we sustained the appointment of a receiver appointed by the district court to take charge of assets, under the control of the court at the time, and belonging to an insolvent bank otherwise unrepresented ; and we recognized his power to make calls upon the holders of unpaid stock for the payment of the debts of the bank. Under that decision, the remedy of the creditors is to apply to the court for an order to the receiver to make calls, and to have him dismissed if he fails to obey it.

There is nothing in the case of *Purton* v. *New Orleans and Carrollton Railroad Company*, which conflicts with the principle of that decision. In *Purton's* case we merely held that shareholders were in all cases bound towards the creditors of the company, up to the full amount of their subscription.

But the questions how and by whom their liability were to be enforced, was left undetermined. It was urged in argument, that the amount of the bonds held by the plaintiffs, and the interest due on them, exceeds the entire amount of the stock mortgages ; and that, as every shareholder is bound to pay his subscription in full, there is no objection to allowing the plaintiffs a direct action against them. The answer to this argument is, that the plaintiffs do not hold all the bonds originally purchased by the Gas Light and Banking Company, and that $100,000 of those bonds are not yet due. The amount of bonds and interest now matured, even if the plea of prescription filed by the defendant in the first series should be overruled, would amount to much less than the aggregate subscription for stock. Under that state of facts, such a proportional amount only of the subscription as will be sufficient to pay the matured debt can be recovered from each shareholder; and in case any of them are insolvent, and the property mortgaged by them has perished or greatly deteriorated in value, the question whether the loss arising from such insolvency is to be borne by the creditors or by the shareholders, is one which the latter have the right to submit to the judiciary, before they are finally adjudged to pay. A recovery against them individually for the full amount of their subscription, would necessarily defeat that right. We are of opinion the exception should have been sustained.

It is therefore ordered, that the judgment in this case be reversed, and that there be judgment against the plaintiffs, as in cases of non-suit ; with costs in both courts.