McFarland, J.,
delivered the opinion of the Court.
The Bank of Memphis, Tennessee, was organized under the provisions of the act of the 12th of February, 1852, usually called the Free Banking Law— the provisions of which are' familiar — it was located in Memphis, Tennessee, and was organized about the 10th of October, 1860.
The Bank of Chattanooga, located at Chattanooga,. Tennessee, was a stock bank, organized under a charter granted by the Legislature the 2d of February, 1854. The same individuals constituted the stockholders of the two banks.
On the 8th of February, 1860, an act was passed providing that upon the Bank of Memphis filing with the Comptroller a surrender of its charter and privileges (except such as- might be - necessary to wind up. the business of the bank), chat the Bank of Chattanooga .might establish a branch at Memphis, under certain restrictions imposed by the act.
On the 1st of March, 1860, an act was passed authorizing the stockholders of the Bank of Chattanooga (two-thirds of the stockholders voting therefor) to change the name to the Bank of Memphis, and have a branch at Memphis; but it appears that neither of the last mentioned acts were accepted or acted upon. It appears that the Bank of Memphis reduced its own circulation to a comparatively small amount, and in the meantime received a large amount of the notes of the Bank of Chattanooga, and paid them out in the usual course of banking business at their counter at Memphis.
*411 Both banks became insolvent, as we presume, from the results of the Avar. On the 16th of -January,, 1866, the Bank of Memphis made an assignment of all its assets to W. G. McClure. Under this assignment the note or bill holders of the bank are preferred. This is admitted to be in accordance with the express provisions of the statute. See act of February 6, 1860, See. 30; act of June the 8th, 1865, Seci 2. Next, certain depositors are provided for upon certain conditions, and special directions were given as to the manner in which certain debts and transactions should be settled.
Among other things a large debt of one million and eighty-one thousand, jive hundred and thirteen dollars and ‘three cents ($1,081,513.03), due to the Bank of Chattanooga is provided for, but this debt is postponed until after the payment of the bill holders and depositors. Very soon after this assignment, to-wit.: on the 23d of January, 1866, the Bank of Chattanooga and W. D. Fullton (who is also a beneficiary under the assignment) filed the original bill in this case. They both accept the provisions of the deed in their favor.
This bill charges that McClure, the trustee, is unable or unwilling to give the large bond that the nominal value of the assets require, but that he is the proper man to execute the trust, and, representing as they do, the principal amount of the debts, they ask his appointment as receiver, and that he distribute- the funds under the orders of the court,, upon giving a bond and security in the sum of fifty' *412 thousand dollars ($50,000). This order was made and the bond given.
Thereupon Asa Hodges and James A. Johnson severally file their cross bill, claiming to be creditors as note or • bill holders of the Bank of Memphis, and attacking the deed of assignment upon various grounds. These bills were answered and proof taken, and upon the hearing the Chancellor dismissed these cross bills, •and from this decree the complainants therein, Hodges and Johnson, have appealed, etc.
The ground of their claim is as follows: They each claim to be the owners and holders of a large •amount of the notes of the Bank of Chattanooga, made and signed by the proper officers of said bank, in the usual form. They charge that in the years 1855, 1856, 1857, 1858, the Bank of Chattanooga had issued a large number of their notes, and put them in circulation. That in the year 1860 the bank of Memphis, by some arrangement, procured a large number of these notes, and had stamped upon their face 'in printer’s ink the words: “Redeemable at the Bank of Memphis,” and paid them out in their business in lieu of its own notes; and in like manner the Bank of Memphis paid out a large number of the notes of the Bank of Chattanooga, dated in 1859, 1860, and which bore upon their face the words, engraved: “Redeemable at the Bank of Memphis.” The complainants, Hodges and Johnson, claim to be the holders and owners of notes of these two classes to a large amount, which they have caused to be protested for non-payment upon *413 demand. They do not show how or when they became the holders of these notes.
Upon this ground they claim to be creditors of the Bank of Memphis. They charge that the deed of assignment is fraudulent, and that they are entitled to priority of satisfaction as note or bill holders. They also pray for other relief not necessary now to mention. The answers of both banks in substance admit that notes of. the description mentioned in the cross bills were paid out by the bank of Memphis, but they both say that the stamping and engraving on these notes, the words, “Redeemable at the Bank of Memphis,” was the act of the Bank of Chattanooga through its agents, and not the act of the Bank of Memphis. Upon this question there is no proof.
They call for the production of the notes held by the complainants. There is no direct response to the allegation that the same notes held by the complainant were in fact paid out by the Bank of Memphis. Nor is there any proof upon this question. The banks and the other defendants in their answer say that the bank at Chattanooga had a much larger number of notes than was required by • the business of the section of the country where the bank was located; and that the Bank of Memphis having but a small issue, and the business of the city of Memphis-requiring a large amount of currency, the arrangement was made for the latter bank to leceive and pay out the notes of. the former. That they were made redeemable at the Bank of Memphis as a mat *414 ter of convenience and justice .to the holders; that funds were constantly kept at the Bank of Memphis for redemption of these notes; and they were in fact so redeemed until the suspension of the banks from the result of the war.
The first and controlling question is: Are these notes the notes of the Bank of Memphis? or is that bank in any way bound for their payment ? That they are not the notes of the Bank of Memphis proper, would seem scarcely to require argument. They are, as we must take it (though the notes are not, nor any of them, copied' into the record), notes of the Bank of Chattanooga in the usual form, payable to bearer; and each note is the promise of that bank, made in the form authorized by its charter, to pay the sum specified to the bearer upon demand. It only differs from any other note of the Bank of Chattanooga in the fact that upon its face it bears the words, either ‘printed or engraved, “Redeemable at the Bank of Memphis.” These words, as we must take it for the purpose of this case, were placed upon the notes by the Bank of Chattanooga. The answer so states, and there is no proof to the contrary; so the question is simply this: The Bank of Chattanooga makes its notes, and causes them to be stamped or engraved in the manner stated, “redeemable at the Bank of Memphis,” for a consideration 'agreed upon. The Bank of Chattanooga transfers these notes to the Bank of Memphis, and they are, by the latter bank, paid out in the due course of banking business, and. a portion of these notes come into the hands of the com *415 plainants. Upon the insolvency of the latter bank, are these complainants to stand upon an equal footing with the holders of the notes of the Bank of Memphis, issued in strict conformity with the law?
The Bank of Memphis, as has been said, was what is. known as a free bank: its circulation was based upon and secured by bonds deposited with the Comptroller of the State. No note of this bank could be lawfully. issued and put in circulation until countersigned by the Comptroller. The notes that' might thus be issued were limited and made dependent upon the amount of bonds in the hands of the Comptroller, and beyond this amount the Comptroller was not authorized to sign the notes of the banks. The law provides a mode by which these bonds and other assets were to be made available to the note holders.
It seems to us very clear that the complainants in this case upon the footing of these notes of the Bank of Chattanooga which they hold, can not be allowed to participate with the holders of the notes of the Bank of Memphis, issued in strict conformity with the law, in the assets of the bank. We do not see the ground upon which it can be maintained that the Bank of Memphis have ever assumed to pay the notes. They are not, in form or in substance, the promise of said bank; its charter, or the laws under which it was organized, do not authorize it to make any such contract, nor has the bank, attempted to do so.
We think it clear that . in a contest between the creditors of an insolvent bank, those creditors whose *416 debts were created under the lawful power given by the charter, are to be preferred to those who claim under a contract that the bank under its charter had no power to make. There is no sound principle upon which it can be held, in such a case, that the bank is estopped to deny the illegality or want of power to make the contract. See Bayler v. Pabet, 5 Mass., 290; and the same general principles are sustained by many other authorities: 3 Head., 337; 21 How., 442; Sanders v. Wyhoff, 4 Hill, N. Y. And besides, as we have said, we are unable to -see that the bank ever assumed to become responsible for these notes. They were unqestionably the notes of the Bank of Chattanooga, and that bank is liable for their payment. They could not well be the notes of both banks.
The .Bank of Memphis cannot be held. liable as guarantor, for the reason among others that the notes being the debts of another bank, there is a promise in writing signed by the party to be charged. There was certainly no consideration to support a promise upon the part of the Bank of Memphis to pay these notes, much less to raise an implied promise.
When these notes were received from the Bank of Chattanooga, they were received, for a consideration paid or assumed by the Bank of Memphis, and so became their property; and whatever the latter bank received for them when they were paid out, was only an equivalent for the right or property the bank parted with. The question simply resolves itself into this. The Bank of Memphis for value, received these *417 notes from the Bank of Chattanooga, and paid them out again, with a knowledge of the fact that upon their face they were redeemable at their counter. .
Under the Code, Secs. 1814 and 1817, banks wer.e forbidden to pay opt the notes of other banks. This Avas modified by the act of the 6th of February, 1860, which in substance provides that banks shall not issue or pay out notes not made payable at their counter. And this was probably the reason these notes were made payable at the Bank of Memphis, in order to enable that Bank to pay them out. The object of the act of the 6th of February, 1860, was probably to enable one bank to pay out the notes of another, provided they are made payable at the counter of the bank paying them out. This was intended to give the holders the right to demand the specie at the bank Avhere they were paid out without the inconvenience of following up the original bank issuing the notes. If payment was refused, it would be the default of the bank making the note. Aside from the provisions of the statute above referred to, there is nothing inconsistent in a bank issuing its notes upon its face payable at the counter of another bank, as A?ell as at its own counter. And the pro\'isions of the act referred to do not make the bank paying out the note of another assume its payment, because the note is payable at its OAvn counter. In fact this would be inconsistent with the powers of the corporation and the right of other creditors.-
It is not material to inquire more particularly whether in paying out these notes the Bank of Mem *418 phis violated tbe prohibitions of the law, or was guilty of a fraud. Nor is it material to inquire the result of this proposition if established. The complainants are not in a condition to make the question. They do not show that they have been injured by any such tort or fraud of the bank. Their claim rests alone upon the contracts evidenced by the notes they hold, and unless upon these contracts they can maintain it, they must fail. As holders of the notes they are not entitled to any thing more than the contract; they are not the assignees of any right of action that the parties may have had who were injured by the fraud.
See Vose v. Grant, 15 Mass., 505, and Morrison v. Deaderick, 10 Hum., 342. The complainants are not entitled to relief as innocent holders of the notes. They must be held to have notice of all that appears upon the face of the notes and in the charters of the banks.
We are of opinion that Hodges and Johnson are not creditors or bill holders of the Bank of Memphis, and consequently have no status in court. And the various questions argued as to the effect or validity of the assignment do not arise.
The decree of the Chancellor dismissing the bill was correct, and will be affirmed with costs.