WASHINGTON B. WILLIAMS, receiver &c.,

*v.*

GARRET S. BOICE et al.

1. An express statutory provision holding corporation directors personally responsible for dividends paid out of the capital instead of the profits, does not exonerate the stockholders from liability to repay such dividends for the benefit of the creditors of the corporation.

2. An allegation in a bill to recover such dividends from the stockholders that there was a deficiency of other assets besides the money divided, to pay the debts, is sufficient, on demurrer; and there is no necessity for an averment that any of the present debts existed when the dividend was declared, or that there are not enough assets now to pay the debts which have been proved (in insolvency); nor can objection be taken to the bill for multifariousness, on the ground that all the stockholders are defendants; nor can the defendants avail themselves of the lapse of time, in analogy to the bar of the statute of limitations, as a defence.

Bill for relief. On general demurrers.

*Mr. T. N. McCarter,* for H. M. Traphagen.

*Mr. H. M. T. Beekman,* for Tierney, Moore, H. Traphagen, and D. and A. Post.

*Mr. F. McGee,* for Clark and Murray.

Williams *v.* Boice.

*Mr. W. B. Williams, in pro. pers.*

THE CHANCELLOR.

The bill is filed by the receiver of the City Bank of Jersey City against a number of persons to recover dividends paid to them or those whose personal representatives they are, on and after January 3d, 1876, out of the assets of the bank, on its stock held by them. The bank was incorporated under the act of the legislature of this state entitled "An act to authorize the business of banking." The amount of its capital stock was $100,000, all of which was subscribed for, but only fifty per cent. of it was called for or paid in. It began business January 2d, 1872, and continued it down to January 9th, 1883, when it stopped payment and suspended business. The next day it was, on proceedings in insolvency in this court, under the act concerning corporations, adjudged insolvent, and the complainant was appointed receiver. The bill states that the assets are insufficient, to pay the debts, and that the deficiency is about $175,000. It also states that the corporation declared and paid sundry dividends on the fifty per cent. of capital paid in, which at the time were alleged by the bank officers to be declared and paid out of its earnings, but it alleges that those dividends, on and after the 3d of January, 1876, were declared and paid at times when, by reason of losses and expenses in business and diminution of

NOTE.—How far equity will interfere with or control the *manner* in which the profits of a corporation, applicable to dividends, are ascertained by the directors before division, *Stevens* v. *South Devon R. R. Co.*, 9 *Hare 313; Corry* v. *Londonderry R. R. Co.*, 29 *Beav. 263; Stringer's Case, L. R. (4 Ch. App.) 475;* see *Smith* v. *Prattville Manuf. Co.*, 29 *Ala. 503; Stoddard* v. *Shetucket Foundry Co., 34 Conn. 542; Nickals* v. *New York, Lake Erie and West. R. R. Co., 15 Rep. 72; Williams* v. *Western Union Tel. Co., 93 N. Y. 162; Painesville R. R. Co.* v. *King, 17 Ohio St. 534.*

A *stockholder* may enjoin the payment of a dividend, where the directors are about to misapply the funds of the corporation in paying such dividend, there being in fact no money earned for such a purpose, *Carpenter* v. *New Haven R. R. Co., 5 Abb. Pr. 277;* and directors may reclaim from the stockholders dividends which were declared out of what they supposed were profits but were afterwards ascertained by them not to be, *Lexington Ins. Co.* v. *Page, 17 B. Mon. 412;* see *Gaffney* v. *Colvill, 6 Hill 567.*

assets by improper and unauthorized acts of the officers, the assets were insufficient to pay the liabilities to depositors and other creditors without impairing the capital paid in; so that there were no profits at those times out of which to pay the dividends; and that so far as they were actually paid they were paid out of the capital paid in; that because of the deficiency, which is about $125,000, after applying the amount of the capital not paid in, the dividends so declared and paid are subject to recall from those who received them or their personal representatives. The amount of those dividends is far less than the amount of the deficiency. The bill is filed against those of the stockholders who received the dividends and who are still living, except those who have repaid them or are out of the jurisdiction, and against the personal representatives of those who are dead, except where they died insolvent. The demurrants are Herbert R. Clarke, Charles H. Murray, Daniel T. Moore, Henry M. Traphagen, Henry Traphagen, Myles Tierney, and David Post and Albert Post.

The principal grounds taken by the counsel of the demurrants are that the bill cannot be maintained, because the defendants are not liable to the suit, inasmuch as the legislature has provided that the directors shall be liable to repay dividends not declared out of the profits of a corporation; that the bill is multifarious; that the remedy, if it exists against the defendants, is at law and

---

As to restraining the payment of a dividend declared on the day on which the bill was filed, *Carlisle* v. *South Eastern R. R. Co.*, *13 Beav. 295*, *1 Macn. & G. 689.*

A *director* may be required to repay a dividend improperly declared out of the company's capital, *Stringer's Case*, *L. R. (4 Ch. App.) 475*; *Alexandra Palace Co. Case*, *L. R. (21 Ch. Div.) 149*; *Rance's Case*, *L. R. (6 Ch. App.) 104*; and cannot set off debts due him from the company, *Flitcroft's Case*, *L. R. (21 Ch. Div.) 519*; even when the debts consist of advancements to pay such dividends, *Van Dyck* v. *McQuade*, *45 N. Y. Super. Ct. 620*; but the director has a right to be indemnified by any shareholders or creditors of the company who were parties or privies thereto, *Alexandra Palace Co. Case*, *L. R. (21 Ch. Div.) 149.* Query, whether a director would be liable criminally, *Burnes* v. *Pennell*, *2 H. L. C. 497.*

A creditor may proceed, *at law*, against the *directors* for improperly declaring dividends when there had been in fact no profits to divide, *Lexington R. R.*

Williams *v.* Boice.

not in equity; that if this suit can be maintained, the allegation
that the payment of the dividends impaired the capital paid in is
not sufficient; and that it is not alleged that there were not
profits out of which to pay the dividends; that there is no alle-
gation that any of the existing debts or liabilities existed at the
time of the payment of the dividends; that there is no alle-
gation that there were not enough assets to pay the then existing
debts at the times of the payment of the dividends, and that
there is no averment that there are not now assets enough to pay
the debts which have been proved in the insolvency proceedings.

It is undeniably true, as a general proposition, that stockhold-
ers are liable in equity to repay, for the benefit of the creditors of
the corporation, money which has been paid to them out of the
capital stock.    This is not based on any statute, but upon the
equitable ground that the stock is regarded as a trust fund for all
the debts of the corporation, and no stockholder can entitle.him-
self to any dividend or share of it until all the debts are paid.
*Story Eq. Jur.* § *1252.*    And the remedy is in equity and not at
law.    The truth of the proposition as a general one is not denied,
but it is insisted that by force of our statute concerning corpora-
tions the liability has in this state been transferred from the
stockholders who may be, and most often are, ignorant of the
true condition of the corporation when the dividend is paid, to
the directors who do know it, and who are the persons really in

Co. v. *Bridges, 7 B. Mon. 556;* or in equity, *Dudley* v. *Price, 10 B. Mon. 84;
Scott* v. *Eagle Ins. Co., 7 Paige 198;* see *Goodin* v. *Cincinnati Canal Co., 13
Ohio St. 169;* but not where the dividends were paid in good faith, although
the corporation afterwards became insolvent, *Reid* v. *Eatonton Manuf. Co., 40
Ga. 98; Le Roy* v. *Globe Ins. Co., 2 Edw. Ch. 657;* see *Lowne* v. *American Ins.
Co., 6 Paige 482; Le Blanc's Case, 14 Hun 8, 75 N. Y. 598.*

A *creditor* may proceed, in equity, against a *stockholder,* where the property
of the corporation has been divided before all its debts were paid, *Bartlett* v.
*Drew, 4 Lans. 444, 57 N. Y. 587; Hastings* v. *Drew, 76 N. Y. 9.*

An assignee in bankruptcy cannot, *at law,* recover from a stockholder the
amount of a dividend, where neither the stockholder nor the directors knew,
*as a fact,* that the company was insolvent when the dividend was declared,
*McLean* v. *Eastman, 21 Hun 312.*

A *creditor* may proceed in equity against the *stockholders,* in his own name,
where the trustee or receiver neglects or refuses to do so, *Hightower* v. *Thorn-*

Williams *v.* Boice.

fault. By the seventh section of that act it is provided that it shall not be lawful for the directors of any bank or moneyed or manufacturing corporation in this state, or corporation organized under that act, to make dividends, except from the surplus or net profits arising from the business of the corporation, nor to divide, withdraw, or in any way pay to the stockholders, or any of them, any part of the capital stock of the corporation, or to reduce the capital stock except according to that act, without the consent of the legislature, and that in case of any violation of the provisions of that section the directors under whose administration it may happen, shall, in their individual and private capacities, jointly and severally be liable, at any time within the period of six years after paying any such dividend, to the corporation, and to the creditors thereof, in the event of its dissolution or insolvency, to the full amount of the dividend made or capital stock so divided, withdrawn, paid out or reduced, with legal interest from the time the liability accrued; provided, that any of the directors who may have been absent when the act was done or resolution passed, or who may have dissented from it at the time, may exonerate themselves from liability by causing their dissent to be entered at large on the minutes of the directors at the time or immediately after they have notice of it, and causing their dissent to be published in a newspaper of the county where the corporation has its office or place of business. *Rev. p. 178.* The-

ton, 8 Ga. 486; Peck v. Miller, 39 Mich. 594; Terry v. Little, 101 U. S. 216; Bank of Poughkeepsie v. Ibbotson, 24 Wend. 473; see Terry v. Martin, 10 S. C. 263; First Nat. Bank v. Smith, 6 Fed. Rep. 215; and his statutory right to sue at law will not preclude his right to seek relief in equity, Eames v. Doris, 102 Ill. 350; Dozier v. Thornton, 19 Ga. 325; Norris v. Johnson, 34 Md. 485; Perry v. Turner, 55 Mo. 418; Van Hook v. Whitlock, 3 Paige 409; Briggs v. Penniman, Hopk. 300. 8 Cow. 387; Bronson v. Wilmington Ins. Co., 85 N. C. 411; Coleman v. White, 14 Wis. 700; Jones v. Jarman, 34 Ark. 323; Smith v. Huckabee, 53 Ala. 191; see Erickson v. Nesmith, 15 Gray 221; S. C., 46 N. H. 371; Tinkham v. Borst, 31 Barb. 407; Kennedy v. Gibson, 8 Wall. 498; Spence v. Shapard, 57 Ala. 598; Pfohl v. Simpson, 74 N. Y. 137.

Under what circumstances stockholders may be allowed to set off debts owing to them by the company for advances beyond the value of their stock, Briggs v. Pennimam, 8 Cow. 387; Webber v. Leighton, 8 Mo. App. 502; Matthews v. Albert, 24 Md. 527; see Merchants Bank v. Shouse (Pa.), 16 Rep. 442.—REP.

statutory liability thus created, however, does not exonerate the stockholders who have received the money from liability to repay it for the benefit of the creditors.  The statute does not transfer the liability from the stockholders to the directors, but it creates a liability on the part of the latter in favor of the corporation or the creditors in certain events.  The section is penal, and so far as it gives a remedy to the corporation it is for the benefit of stockholders as well as creditors.  So far as the latter are concerned, it provides what may be an easier and more economical mode of recovery than suit against the stockholders.  It might be very difficult to reach the stockholders (there might be a very large number of them, and they might be greatly scattered, or might be all non-residents), while it might not be difficult or not so difficult to reach the directors.  The stockholder who has received part of the capital by way of dividend, without legislative authority, has no right to it as against the creditors of the corporation, and no wrong is done him if he be compelled to repay it when it is required to pay the debts of the corporation. He or those from or under whom he derives his title to his stock, placed that money in the treasury of the corporation to answer for its debts if necessary, and it was devoted to that object so long as it might be required for the purpose.  If he withdraws or receives it back again, except where the amount of the stock is reduced according to law, it will in his hands be subject to that trust, the trust for the payment of the debts of the corporation if needed for the purpose.  The directors who declare the dividend may personally profit but little comparatively from the dividend, and yet under the above-quoted section of the act they may be compelled to pay the whole of it to the corporation or creditors out of their own pockets.  But that provision does not, either in terms or by implication, exonerate the stockholders, though a recovery of the money from the directors would in fact exonerate them.  The directors are their agents, and if redress has been obtained by recourse to the agent, it would of course exonerate the principal.  The remedy given by the statute is cumulative.  The legislature does not say that the stockholders shall be at liberty to keep the money, and that the creditors must

24

have recourse to the directors alone. The bill, it may be remarked, alleges that the stockholders who received the dividends had notice of the fact that the money was part of the capital paid in, and also of the fact that without that money there was a deficiency of assets to pay the debts.

Nor is the criticism that the bill does not state that there were no profits out of which to pay the dividends, well founded. The bill states that there was a deficiency of other assets besides the money divided, to pay the debts. It states that when the dividends were declared the assets were, by reason of losses and expenses in business and diminution by improper and unauthorized acts of the officers, insufficient to pay the liabilities of the bank to depositors and other creditors without impairing the $50,000 of capital paid in, so that there were no profits at such times out of which to pay those dividends, and so far as they were paid they were paid out of the capital paid in.

Another objection is that there is no allegation that any of the debts which now exist were debts or liabilities at the time of the payment of the dividends. The bill makes no such statement, nor is the fact fairly to be deduced from its statements. Although there are cases in which it has been said that recovery can only be had in cases of this kind by creditors whose debts existed at the time of the withdrawal of the funds, that view is not to be adopted. The distinction is not well founded. The capital of a corporation is a fund pledged for the payment of its debts. Each person who gives credit to it does so in the confidence that that fund exists for his protection and security against loss. If the stockholders secretly withdraw it, under the false pretence of dividends of profits when there are none, it is obvious that as great a wrong may be done to future creditors as to existing ones. In either case the stockholders hold a part of that fund, which is pledged to the payment of the creditors. The injury to the existing creditor is obvious. That to the future creditor is the same; for the stockholder holds out to him that the capital is of the nominal amount, while in fact he has secretly withdrawn part of it. If all who should become creditors after the withdrawal had notice of the fact that the capital

Williams v. Boice.

had been reduced—that the dividend had been paid out of the ·capital—then the distinction might perhaps be maintained, but they not only have no such notice, but in fact are led to believe that the capital is what it nominally purports to be.

The objection that the bill does not state that there were not enough assets to pay the debts when the dividends were made is founded on a misapprehension as to the statements of the bill, for the allegation is distinctly made.

Nor is the objection that it does not appear that there are not enough assets now to pay the debts which have been proven, tenable. It does not appear what debts have been proven, and it cannot appear until after this court shall have made a decree of distribution what debts will be allowed. For the purposes of this suit, it is not necessary to make any allegation on that head. After applying the assets and capital not paid in to the payment of the debts, there will, as before stated, remain a defi-ciency of about $125,000. The whole of the dividends declared on and after January 3d, 1876, amounts to about $15,000.

Nor is the objection of multifariousness well taken. The stockholders who are called upon to make contribution are nec-essary parties, and should all be made parties unless good reason ·exists to the contrary. In *Wood* v. *Dummer, 3 Mason 308,* which was a suit by creditors of a bank against some of the stockholders for payment of debts, on the ground of a fraudulent division of the capital stock of the bank by the stockholders, the objection of *non-joinder* was made, and it was insisted that all the stockholders ought to be made parties defendant, because all were liable to contribute. The objection was overruled on the ground that it would be impracticable to bring in all the stockholders. In *Vose* v. *Grant, 15 Mass. 505,* and *Spear* v. *Grant, 16 Mass. 9,* the stockholders of an incorporated bank, after the expiration of its charter, had made dividends of the capital stock among themselves, so that there were not enough corporate funds left to pay its debts, and a creditor brought suit as for a tort against one of them who had received his proportion of the dividends. It was held that he could not maintain the suit at law, but that a court of chancery, where suit could be

brought by or in behalf of all the creditors against all the stock-holders, would be the appropriate forum. It is very clear that there is no ground whatever for the objection of multifariousness.

It remains to consider another question not raised on the argument, viz., whether limitation from lapse of time, in analogy to the bar of the statute of limitations, can avail the defendants. I am of opinion that it cannot. When it is considered that the withdrawal of part of the capital, under pretence of a division of profits where there are no profits to divide, is a fraud on the creditors, it will be seen at once that a plea of such limitation could not, except under peculiar circumstances, be successfully interposed to bar the claim of creditors for relief against the doers of or participants in the fraud. The case is very like that of a trustee secretly applying the trust property to his own use. He cannot thus protect himself against the claim of his *cestui que trust*. In *Wood* v. *Dummer*, *ubi supra*, this question was considered by Judge Story, who said that the rights of the plaintiffs in that case accrued as against the defendants within six years; for until a refusal of payment by the bank, followed by an inability to pay on its part, there was no cause of proceeding in equity against the stockholders; that in cases not of constructive, but of express trusts, so long as they are not encountered by an adverse possession and denial of right, the statute of limitations does not begin to run. He added that he should have very great difficulty in allowing a bar of the statute of limitations to operate in a case of this nature, unless where the circumstances of negligence on the one side and of positive denial of right on the other were very cogent. In the case before me the bill was filed June 20th, 1883. The complainant seeks to recover dividends declared on and after January 3d, 1876. The bank stopped payment January 9th, 1883, and the receiver was appointed the next day. The defendants could not avail themselves of the plea of limitation from lapse of time. The demurrers will be overruled, with costs.