Parker, C. J.
The difficulties in supporting this action are, in some respects, greater than those which occurred in the case of Vose vs. Grant, A promise in law is supposed to arise on the facts stated in the declaration ; for it is agreed that no express promise was made.
The facts are, substantially, that the defendant, being a stockholder in the Hallowell and Augusta Bank, did withdraw from the bank his proportion of stock; the bank being * then [* 13 ] indebted on bills which had been previously issued, some of which have come into the hands of the plaintiff. The bank being now broken up and dissolved, we are to suppose, in order to maintain the action, that each individual stockholder engaged, or was liable by law, to each individual creditor of the bank, to pay him the amount of the notes or bills of the bank, which he should hold on the dissolution of the bank, or the division of the stock amona i • ° the proprietors.
But we think no such inference can be drawn from the relation of a stockholder to the bank or its creditors. The note itself is evidence of an express promise to the bona fide holder, and cannot be the basis of an implied promise by the stockholders individually. Indeed a claim of this nature would be liable to the effect of the statute of frauds and perjuries ; for most clearly the debt was not originally the debt of the individual stockholders, but of the company ; and the engagement, if any existed against the defendant or the other stockholders, must have been collateral only; and so with in the principles, which have been applied in the construction and application of that statute.
There are, however, difficulties other than technical, which are insuperable, in our apprehension. If a promise can be supposed to have been made by the defendant, or created by law, what party is the promisee ? Can it be that each stockholder has promised each holder of the notes, to pay his demand, if the bank should become unable or unwilling ? This would be to encounter a hazard, limited only by the amount of the whole number of notes which the bank may issue. This certainly cannot be imagined to be the nature of the liability. Shall the responsibility be limited to the amount of interest, which the stockholder has in the bank ? If so, which creditor shall have it ? He who is the sharpest, and has made the first demand ? Oi he who has been more modest, and perhaps more mer *12 itorious ? Shall the original holder, who paid the value to the bank, be indemnified ? Or he also who, when the credit ol [ * 14] the * bank has run down, may have bought the notes for a trifle ?—These questions it would certainly be very difficult to settle, if the stockholder was liable to the amount of his share of the stock only; and if he were equally liable to each holder of the notes (which he must be if liable at all; for if the facts agreed create a promise to one, they create a promise to all), then the most palpable injustice would take place. For a stockholder, wholly innocent and ignorant of the mismanagement, which has brought the bank into discredit, might be ruined by reason of owning a single share in the stock of the corporation.
There is no view of the subject in which we can give effect to the claim of the plaintiff. The misfortune arises out of the imperfect provisions, made by the legislature, for the security of creditors to banks, in the acts for their incorporation. It is well known that frequent attempts were made to introduce into those acts clauses, creating a liability upon the stockholders, such as is attempted to be established by this action, but without success; the legislature at first conceiving that there was no occasion for such liability, and being afterwards unwilling to make a discrimination between the early incorporated banks and those which were recently established. At last, however, when all the charters were about expiring, the increasing distrust in the community of these corporations, induced the legislature to make this individual responsibility, to the amount of the shares, a condition of all future charters.
Perhaps nothing could show more conclusively the public opinion, (3) that individuals were not answerable by the principles of the common law, than this reluctant establishment of the liability by the legislature. It used to be inquired, what prudent man would hazard his property in an institution, if it should be subject to forfeiture and loss by the misconduct and fraud of those directors and officers, over whose conduct a single stockholder could have so little control. And it was said, that those who deal with banks, [ * 15 ] and take their bills, confide altogether in the credit *oi the corporation, and hot in that of the individuals. Whether this reasoning was correct or not, it certainly had its influence on the legislature, until it was discovered that corporations were liable to the same misfortunes in the course of their business and were as subject to the consequences of the mismanagement, indiscretion, or even fraud of their agents, as individual merchants or traders.
*13 Still it may be said, that the stock actually vested is, by force of the act of incorporation, pledged for the payment of all thd debts of the institution; and that it ought not to be withdrawn, until all such debts are paid. Even this, however, would give actual security for but one half the possible amount of debt; as all banks have had the privilege of creating debts to double the amount of their capital. But the stock ought undoubtedly to be considered as a pledge, as far as it will go; and if withdrawn before the debts are discharged, there would seem to arise an equitable obligation, on the part of the stockholders, to account for so much as they originally consented to pledge. The legislature so considered, when they passed the act allowing four years for the gradual closing of their concerns and dividing their stock, after the expiration of the charters of the banks (4).
But there is no mode at common law, that we can discern, by which any one creditor can compel any one stockholder to pay him the amount of his stock ; and if any remedy to this effect does exist, it must be in a tribunal having power to act over the whole subject matter in an equitable point of view, and so to adjust the various claims, and the various liabilities, as to produce a final and just distribution of the funds equitably bound, among all those who can substantiate their claims, on grounds maintainable in equity as well as at law. We can conceive of no case, in which an action at common law will lie, without evidence of a fraudulent contrivance on the part of the person sued, to withdraw his share of the capital stock, and to cheat the creditors of the bank. What would be proper evidence of * such fraud need not be [* 16 J decided, until such an action shall be before us. It is enough, that the present action suggests no fraud ; nor will the facts agreed lead to the suspicion of any, against the present defendant

Plaintiff nonsuit

 [Surely public opinion ought not to be quoted as law. —Ed.]

 Stat 1812, c. 57.