# Henry Brooks *v.* John Brooks and Emma Jenkinson. Appeal of James R. Bissex and Albert E. Miller.

*Corporation—Dissolution—Contract—Parties—Stockholder.*

A corporation owning real estate and having cash in bank was about to dissolve and distribute the cash among its stockholders. It had no debts, except certain bonds secured by mortgage upon its land. The bondholders, after proceedings to prevent such distribution, consented to the sale of the land, and it was sold to B., subject to the mortgage. B. agreed with the corporation to purchase and cancel the bonds and satisfy the mortgage before the time of settlement. Prior to this he had secured an agreement from the bondholders to sell him their bonds at seventy-five per cent of their face value. In order to procure the deed before the performance of the condition to purchase the bonds he agreed in writing, in consideration of the present delivery of the deed, " to indemnify and save harmless said company, and each and every of the stockholders thereof . . . . of and from all claims and demands by the holders of said bonds and mortgage ; " and further, that the lien of the mortgage and claims on the bonds should be restricted to the land, " and that the money now in the treasury of said company, or which may hereafter be in the treasury, shall not be made subject to, or liable for any claim on the part of said bondholders." B. failed to keep this agreement; the mortgage was foreclosed, and the money in bank was attached, and lost to the stockholders. *Held*, (1) that the agreement with B. was intended for the protection of the individual interest of the stockholders; (2) that it was proper to bring an action against B. for the loss of the money in bank, in the name of the corporation, to the use of the individual stockholders; (3) that a judgment in such an action was for the benefit of the individual stockholders, and neither the receiver of the corporation, nor the bondholders were entitled to share in it.

Argued Jan. 13, 1896. Appeal, No. 476, Jan. T., 1895, by James R. Bissex and Albert E. Miller, from decree of C. P. No. 4, Phila. Co., Sept. T., 1892, No. 418, dismissing exceptions to master's report. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Bill in equity in partition.

The case was referred to Henry J. McCarthy, Esq., as master, who reported the facts to be as follows :

1. On and prior to the 8th day of February, 1892, the Mantua Hall and Market Company was the owner of a lot of ground at Thirty-sixth and Haverford streets.  The said company at that time was the obligor in an issue of twenty-five thousand dollars ($25,000) worth of bonds outstanding which were secured by a mortgage upon the said property.  The said bonds were about to mature.  The company owed no other indebtedness than this outstanding issue of bonds.  There was the sum of $2,299.68 in cash in the treasury of the company, which sum was deposited with the West Philadelphia Title and Trust Company.  The board of directors of the Mantua Hall and Market Company, by resolution, had determined to dissolve the corporation, to sell the real estate subject to the bonds and mortgage and to divide the money in bank among its stockholders.  In pursuance of this resolution, the property had been advertised to be sold at public auction subject to the bonds and mortgage of the company.  Two proceedings in equity had been commenced on behalf of the bondholders, averring that the bonds were about to fall due, and that the funds in the treasury of the company were about to be divided to the injury of the bondholders.

2. At the time advertised for the sale, after consultation with a committee of the bondholders, an agreement was entered into between the officers of the company and John Brooks for the private sale to him of the real estate of the corporation, in consideration of one hundred and fifty dollars ($150) in cash, subject to the bonds and mortgage, the purchaser to pay off the bonds and satisfy the mortgage of record on or before a certain date.

3. On December 15, 1891, by an agreement in writing, John Brooks agreed with George W. Hancock on behalf of the bondholders as their authorized agent to pay to the said Hancock on or before January 2, 1892, seventy-five per cent (75%) of the face value and accrued interest of all bonds of the Mantua Hall and Market Company delivered by the said Hancock to the said Brooks not exceeding twenty-five thousand dollars ($25,000).

4. On February 8, 1892, John Brooks had not carried out the agreement to purchase the bonds, nor had he paid to the Mantua Hall and Market Company the consideration for the purchase of the land.  On that date Alexander Simpson, Jr., was counsel for the Mantua Hall and Market Company.  He had been counsel for that corporation for about eighteen months prior to February 8, 1892, under a yearly salary, which did not include court litigation.  Prior to that date a committee of three stockholders had called upon Mr. Simpson and asked him to act for themselves and their fellow stockholders in their individual capacity.  Mr. Simpson knew that several stockholders who had very small holdings of stock and very considerable holdings of bonds were looking out for their interests as bondholders and not as stockholders.  He did not know that the committee who waited upon him were not acting in harmony with the stockholders who were also bondholders last referred to.  He did not then know the stockholders by name and had no list of them.

5. On the said 8th day of February, 1892, John Brooks called upon Alexander Simpson, Jr., and asked that the deed for the sale to him of the said real estate of the Mantua Hall and Market Company, which had been prepared and was then in the hands of Mr. Simpson ready for delivery, should be delivered to him in advance of his performance of his part of the agreement of sale, averring as a reason for the request that he had arranged to borrow money to carry out his agreement and needed the title to complete his arrangement.  Mr. Simpson informed Mr. Brooks that unless indemnity was given so as to make sure that the agreement of sale was carried out and the bonds canceled and the mortgage satisfied so that the moneys in bank could be divided among the stockholders, he would not deliver the deed.  Mr. Brooks finally agreed to give him a bond, and thereupon an agreement was drawn, signed, sealed and delivered by Mr. Brooks in the presence of Mr. Simpson, and upon receipt of the same the deed from the corporation to Mr. Brooks was delivered by Mr. Simpson to Mr. Brooks.

6. The agreement so executed is in the following words and figures :

" Whereas, on December 14th, 1891, I agreed to buy from

the Mantua Hall and Market Company premises situate on the northeast corner of Thirty-sixth and Haverford Streets, West Philadelphia, for the price or sum of $150, subject to the $25,000 of bonds due thereout and secured by mortgage now thereon, and agreed to pay off and cancel said bonds, and have said mortgage satisfied of record.

" And whereas, the said Company, by deed dated January 30th, 1892, have conveyed said premises to me, subject to said mortgage, and I have requested said deed to be delivered contemporaneously herewith, though said bonds have not yet been paid off and canceled, nor said mortgage satisfied of record.

'' And whereas, there are two bills in equity pending which hinder a distribution of the funds of said Company among the stockholders thereof, and which will be released by the cancellation of said bonds and satisfaction of said mortgage.

" Now, in consideration of the present delivery of said deed, I do hereby agree to pay off and cancel said bonds and satisfy said mortgage of record within twenty days from this date, and do hereby agree to indemnify and save harmless said company, and each and every of the stockholders thereof, and the executors, administrators and assigns of each and every stockholder, of and from all claims and demands by the holders of said bonds and mortgage, and do agree that said bonds and mortgage shall be restricted in their lien and claim to said property, and that the money now in the treasury of said company, or which may hereafter be in the treasury, shall not be made subject to or liable for any claim on the part of said bondholders or any of them, or upon the part of the trustees of said mortgage, or on the part of the executors, administrators, successors, or assigns of any of the said parties ; that no further proceedings shall at any time be had upon the Bills in Equity above referred to, except to discontinue the same ; and that no other or further bills shall be filed, the object of which shall be to prevent or postpone a distribution of said funds.

" Witness my hand and seal this eighth day of February, one thousand eight hundred and ninety-two (1892).

                                " JOHN BROOKS.    [SEAL]

" Witnesses present:

    " ALEX. SIMPSON, JR.,

    " FREDERICK W. BAUER."

\*      \*      \*      \*      \*      \*      \*      \*

8. Brooks wholly failed to pay off or cancel the said bonds and satisfy the mortgage, and defaulted in the performance of all the agreements which he had with the bondholders and the company, as above set forth.

9. A scire facias was issued in the court of common pleas, No. 4, of March term, 1892, No. 47, by the trustees named in the aforesaid mortgage, and judgment was duly recovered thereon on March 28, 1892, against the Mantua Hall and Market Company for the sum of twenty-five thousand eight hundred and sixty-two dollars and fifty cents ($25,862.50). A levari facias was issued upon the said judgment and the mortgaged premises were sold at sheriff's sale on July 5, 1892, realizing the net sum of nineteen thousand nine hundred and fifty-two dollars and thirty-five cents ($19,952.35).

10. George A. Hays, owner of ten thousand dollars ($10,000) worth of the bonds of the Mantua Hall and Market Company, brought suit thereon against the said company in the court of common pleas, No. 3, of March term, 1892, No. 430, and judgment was duly recovered thereon on April 16, 1892, against the Mantua Hall and Market Company in the sum of ten thousand four hundred and thirty-five dollars ($10,435). An attachment sur judgment was issued upon the said judgment against the treasurer of the Mantua Hall and Market Company and the West Philadelphia Title and Trust Company, garnishees, and on March 21, 1893, judgment was recovered against the said garnishees in the sum of two thousand two hundred and ninety-nine dollars and sixty-eight cents ($2,299.68), being the amount of money held by them as cash belonging in the treasury of the said Mantua Hall and Market Company. On April 20, 1893, the said sum was paid to the attaching creditor, George A. Hays, and by him divided up among all the bondholders of the corporation.

11. On April 22, 1893, Alexander Simpson, Jr., counsel of record for the Mantua Hall and Market Company, brought suit for the said Mantua Hall and Market Company against John Brooks in the court of common pleas, No. 2, of March term, 1893, No. 522. This is the suit first before referred to in this report, the judgment in which constitutes the lien upon the fund in this master's hands for distribution. The title of this

case as it appears upon the record is " Mantua Hall and Market Company v. John Brooks." The statement filed in the said cause begins in the following words : " Following is a concise statement of plaintiffs' claim in the above case :

" The Mantua Hall and Market Company, the plaintiffs in the above case, to the use and for the benefit of the stockholders of said company, claim to recover from John Brooks, the defendant therein, the sum of $2,549.68, with legal interest, which plaintiffs aver is justly due and owing by the defendant to them, to the use and for the benefit of said stockholders, by reason of the following : " The statement proceeds to aver the execution of the agreement of Feburary 8, 1892, which it sets forth in full, and the occurrence of the facts heretofore found in the eighth, ninth and tenth findings of facts, and concludes as follows :

" Plaintiffs aver, that by reason of the facts aforesaid, not only have they lost said sum of $2,299.68, but they have been put to considerable expense in defending said proceedings after notice by them to defendant to defend the same, and a request by him to their counsel to defend the same, and the reasonable cost of such services is the sum of $250, which has been duly paid to said counsel. .

" Plaintiffs therefore claim said sums from defendant with legal interest. Hence this suit."

12. After an affidavit of defense had been filed by the defendant in the said suit of Mantua Hall and Market Company v. Brooks, a rule was taken for judgment for want of a sufficient affidavit of defense, which, after argument, was made absolute and damages assessed on June 10, 1893, in the sum of two thousand five hundred and sixty-seven dollars and seventy-two cents ($2,567.72). On June 14, 1893, a certiorari from the Supreme Court, of July term, 1893, No. 107, was brought into the office. After argument in the Supreme Court the judgment of the court below was affirmed, as already reported : 163 Pa. 40.

Upon this state of facts, Mr. Simpson claims that the record of this judgment ought to be amended so as to add the names of stockholders as use plaintiffs in their individual capacity, and that the master, on the equitable principle that what ought to be done shall be treated as having been done, should treat the judgment as if so amended, and award so much of the fund in

his hands for distribution, as is subject to the lien thereof, to Alexander Simpson, Jr., as counsel for the said stockholders in their individual capacity.

The master, citing Freeland v. R. R., 2 Pearson, 73; Com. v. Dillon, 81* Pa. 41; Tatham v. Ramey, 82 Pa. 130; Snyder v. Schaadt, 4 W. N. C. 336; Myers v. Elkins, 7 W. N. C. 280; McPartland v. P. R. R., 18 W. N. C. 79; Bank v. Shoemaker, 117 Pa. 94; Powers' App., 120 Pa. 320, recommended that the funds should be awarded to Sydney G. Fisher, Esq., receiver of the Mantua Hall and Market Company.

Exceptions to the master's report were dismissed, without opinion filed, and a decree entered in accordance with report of the master.

*Error assigned* was decree as above.

*M. Hampton Todd,* for appellant.—The agreement with Brooks was for the benefit of the stockholders of the company, and the suit was properly brought to their use in the name of the company: Blymire v. Boistle, 6 W. 183; but if not properly brought, the defendant alone could object: Coffey v. White, 14 W. N. C. 108.

*Sydney G. Fisher* and *Henry J. Hancock,* for appellee.—Parol evidence of the intention of the parties is inadmissible: Wallace v. Baker, 1 Binn. 610; Maitin v. Berens, 67 Pa. 459; North v. Williams, 120 Pa. 109; Caley v. Hoopes, 86 Pa. 493; McClure v. Ry. Co., 90 Pa. 269; Murray v. R. R., 103 Pa. 37; Sylvius v. Kosek, 117 Pa. 67; Jackson v. Payne, 114 Pa. 67; Phillips v. Meily, 106 Pa. 537.

The corporate property is a trust fund for the benefit of the corporation creditors: Riddell v. Harmony Fire Co., 8 Phila. 310; Beach on Corporations, sec. 609; Morawetz on Corporations, sec. 443; Allibone v. Hagar, 46 Pa. 54.

The record of the judgment in the other case is conclusive: Bidwell v. R. R., 114 Pa. 535; Fox's App., 11 Atl. 228.

The record of other judgments cannot be amended: Tatham v. Ramey, 82 Pa. 130; Snyder v Schaadt, 4 W. N. C. 336; Tyrill v. Lamb, 96 Pa. 464; Myers v. Kingston Coal Co., 126 Pa. 582.

A master's finding of facts will not be reversed: Weaver's App., 12 Atl. 312; Stoker v. Hutter, 134 Pa. 19; Brotherton v. Reynolds, 164 Pa. 134.

OPINION BY MR. JUSTICE MITCHELL, March 30, 1896:

The fund in court represents the estate of John Brooks in the land sold under proceedings in partition, and it is admitted that the first lien on it is the judgment of the Mantua Hall and Market Company. The question therefore is who is the real plaintiff in that judgment, the company in its corporate character represented by the receiver, or the company as a general term used to comprehend all the stockholders in their individual rights? This depends on the agreement which gave the cause of action on which the judgment was founded. Before taking up the consideration of the writing itself, a summary of the circumstances which led up to it will be instructive.

The facts as found by the master show that the company was about to dissolve. It had no debts except certain bonds secured by mortgage upon its land. It had cash on hand, in round figures $2,300, and it determined to sell the land subject to the mortgage, and distribute the cash among its stockholders. Of course this could not be done without the consent of the bondholders, and some proceedings in equity were begun to prevent any such distribution of assets. The consent however was subsequently given, and the land was sold to Brooks subject to the mortgage, he agreeing with the company to purchase and cancel the bonds and satisfy the mortgage before the time of settlement. In fact the bondholders had already agreed with Brooks to sell him their bonds at 75 per cent of their face value and accrued interest. Brooks next desired to have the deed delivered to him before his performance of the condition to purchase the bonds, but this the counsel for the grantors refused to do unless performance of the condition was secured. This was accordingly done by the writing of February 8, 1892, which gives rise to this controversy. Much stress was laid by the learned master, and in the argument here, on the question whether Mr. Simpson was counsel for the company or for the individual stockholders, but the contention is quite immaterial. He was counsel for both, and there was no reason why he should not be. Their interests were identical at that time, to wit, that

Brooks should be kept to his contract. If he performed it, the bonds would be canceled and the company being about to dissolve with no other debts would of course distribute the cash on hand among its stockholders. That the latter should as individuals be alert to see that this arrangement, enuring to their benefit, was carried out, was natural and proper, and there was no reason why they should not secure the services of the same counsel who was already acting for the company to that same end. The subsequent facts are that Brooks failed to keep his contract, the land was sold under the mortgage, judgment was obtained against the company on some of the bonds and its cash in bank attached and distributed among the bondholders.

Taking up now the writing of February 8, 1892, we find it is an agreement by Brooks, reciting his purchase from the Mantua Company, the making of the deed to him, the withholding of delivery until his performance of the condition to purchase and cancel the bonds, and the pendency of two bills in equity "which hinder a distribution of the funds of said company among the stockholders thereof," and then in consideration of the present delivery of the deed, he agrees " to indemnify and save harmless said company, and each and every of the stockholders thereof . . . . of and from all claims and demands by the holders of said bonds and mortgage," that the lien of the mortgage and claims on the bonds shall be restricted to the land, "and that the money now in the treasury of said company, or which may hereafter be in the treasury shall not be made subject to or liable for any claim on the part of said bondholders."

This instrument is so clearly intended for the protection of the individual interests of the stockholders that Mr. Simpson was quite justified in saying that in drawing it he was acting solely for them. The master was led to give it a different construction by the argument that " the stockholders taken collectively as holders of stock are the corporation, and the words quoted in the instrument amount to nothing more than a reiteration of the promise made already to said company." It is true that for many if not most purposes the stockholders in their aggregate capacity are the corporation, yet each as an individual stockholder may have individual rights as regards the corporation, or his co-members, or other parties. The whole tenor of

this instrument, as well as the circumstances under which it was drawn, indicate that it was these individual rights that were in view. The recital of the bills in equity that hinder the distribution among the stockholders, and the promise to indemnify the company "and each and every of the stockholders thereof" would not only be superfluous but impertinent and misleading if the obligation was meant only for the technical corporation. The name of the company was used as a comprehensive substitute for the names of all the individuals who held stock, and was as effectual to protect their individual interests as if they had been severally named.

The suit was brought upon this view. It was necessarily in the name of the company as the legal plaintiff but "to the use and for the benefit of the stockholders," and was for the specific loss of the $2,300 in the treasury which Brooks had agreed to protect from any claim on the part of the bondholders and which if he had done so would have been distributed to the stockholders individually. If the action had been on behalf of the company it would have been on the contract of sale in December, 1891, and the claim for damages would have been for $5,200, the difference between Brooks' contract and the price for which the land was sold under the mortgage. The cause of action however on which this judgment rests was not the contract with the company for the sale of the land, but the special and different contract with the stockholders to protect the money in the treasury from all claim of the bondholders so that it might reach the stockholders individually. Under this judgment the bondholders as represented by the receiver have no claim. It is the product of Brooks' indemnity to the stockholders for the money in the treasury. The creditors have already got that money and they have no legal right to the indemnity fund also. Nor have they any equity. They agreed with Brooks to sell him their bonds at seventy-five per cent, and have already received nearly ninety, and are thus the only parties who have profited by his failure to perform his contract.

There is no necessity to reform the writing of February 8, 1892, nor to add new parties to the judgment. It is clear on the writing itself that it was intended for the protection and benefit of the stockholders individually, and the suit having

been brought to their use, their several claims can be established before the auditor as the record now stands.

Decree reversed, and distribution of the fund directed to be made to the individual stockholders in accordance with the views herein expressed. Costs to be paid by the appellee.