## LAWRENCE v. GREENUP.

*(Circuit Court of Appeals, Sixth Circuit.   November 13, 1899.)*

No. 701.

1. CORPORATIONS—TRUST-FUND DOCTRINE.
   Under the decisions of the courts of the United States, a solvent corporation does not hold its capital or property subject to any trust in favor of its creditors, although it is in process of liquidation.

2. NATIONAL BANKS—DISTRIBUTION OF CAPITAL DURING LIQUIDATION—ACTION TO RECOVER FROM STOCKHOLDER.
   The receiver of a national bank cannot recover from a stockholder, in an action at law, a sum received by him on a partial distribution of the capital of the bank, made and received in good faith during voluntary liquidation, when the bank was at the time solvent, and retained sufficient assets to pay all its liabilities, although it subsequently became insolvent.

In Error to the Circuit Court of the United States for the Western District of Michigan.

This is an action at law by a receiver of the Big Rapids National Bank to recover a dividend paid by said bank, out of capital, to the defendant. John Greenup, who was a stockholder. Upon the conclusion of all the evidence, the court instructed the jury that there could be no recovery at law upon the facts proven; that the remedy of the receiver, if any he had, was by a bill in equity; and that a verdict should be returned in favor of Greenup. The receiver has sued out this writ of error. The facts, so far as material to the questions to be decided, are as follows:

(1) The Big Rapids National Bank went into voluntary liquidation in April, 1895. It was solvent at the time, and the object in liquidating was to consolidate with the Mecosta County Savings Bank, whose officers and stockholders were largely the same persons who were officers and stockholders of the national bank. There was an agreement that the savings bank should take the assets of the national bank, and pay its depositors and other debts; and it is stated in the bill of exceptions that the assets of the national bank were moved to the office of the savings bank, and that "a large amount of the assets of the national bank were so taken, and a large amount of the liabilities paid, and that the savings bank made advances in aid of its liquidation." This process of liquidation went on from about May 1, 1895, until December 31, 1896, when the comptroller, being of opinion that the bank was then insolvent, appointed the plaintiff in error receiver of said national bank, who at once took possession of the remaining assets. It is not shown why the agreement for a consolidation was not carried out, though it is inferable that it fell through in consequence of the subsequent failure of the savings bank, which occurred in October, 1896; the receivership being, as stated, "the outgrowth of the failure" of said savings bank. During this entire period of liquidation the affairs of both banks were under the control of C. W. Comstock, who was the cashier of the national bank, and "general manager of both banks." Claims, "proven to the satisfaction of the comptroller," aggregating $19,086.03, are shown to have been preferred against the national bank after the appointment of Lawrence receiver. The receiver is shown to have collected from assets $12,817.35. Of this sum, he has paid out as a dividend upon such claims $4,771.51. The remainder he has paid out for expenses of receivership, except $2,348.92 now on hand. Aside from claims against stockholders for return of dividends, the receiver has in his hands assets of the probable value of from seven to eight thousand dollars. These assets consist in bank furniture, and choses in action in process of collection. Of the claims stated to have been "proven to the satisfaction of the comptroller," $16,186.28 is due to the Mecosta County Savings Bank, the whole of which originated while the national bank was in process of liquidation, and consists in claims of depositors paid off by the savings bank in excess of assets received from the national bank, which claims were paid under the agreement mentioned above. The

statement of the bill of exceptions is that "the entire claims of the savings bank arose subsequent to the time when the national bank went into voluntary liquidation, and arose upon contract made after it went into liquidation." Upon this savings-bank claim for advances or loans made to the liquidating bank, the receiver has paid $4,016.57, leaving due a balance of $12,-139.71. The claims against the national bank allowed by the receiver, other than this claim of this balance due to the savings bank, after deducting the dividend paid by the comptroller, aggregate only $2,185.50,—an amount less than the actual cash assets undistributed.

(2) In June, 1895, the directors of the liquidating bank passed a resolution to pay a dividend of 50 per cent. to the stockholders, and further dividends as fast as possible. Under this resolution the defendant in error, who held stock of the par value of $2,000, received a dividend of 50 per cent., or $1,000. All other stockholders were paid a like amount, and some were subsequently paid further dividends ranging from 10 to 37 per cent. At the time these dividends were paid, the directors and stockholders honestly believed the bank to be solvent, and that these distributions were authorized by the condition of the assets. Defendant in error received the dividend paid to him in November, 1895, and since then other dividends were paid out of remaining assets to other stockholders, but no additional dividend has been paid to him. The bill of exceptions states that it was admitted by counsel for the receiver that the defendant in error, Greenup, "received the dividend paid to him in good faith," "believing the bank was solvent," and that "no bad faith was alleged or claimed," and that counsel also admitted that all who had received dividends had not been sued, but only such, and in separate actions, whom the receiver believed to be solvent. The officers and directors of the savings bank were aware of the payment of these dividends, and many of them were themselves recipients of dividends upon their own stock in the national bank. Chester W. Comstock, who was the officer in charge of the liquidation, was also the general manager of the business of the savings bank.

N. A. Fletcher, for plaintiff in error.

Mark Norris, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and SWAN, District Judge.

LURTON, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

The claim of the receiver is based upon the theory that a dividend paid out of capital stock was wrongfully paid and received, and that the liability to repay such dividend constitutes an asset of the bank, which can be recovered in a suit at law. It is at the outset well enough to observe that this is not a suit to recover an unpaid stock subscription, as in Sanger v. Upton, 91 U. S. 56–62. In the case referred to there could be no question but that the remedy against the subscriber was at law, for the court observed that "the liability of the plaintiff in error, and the right and title of the company, were legal in their character"; "if the company had sued, it might have sued at law. The rights of the company passed to the assignee, and he also could enforce them by a legal remedy." Neither is the suit based upon the liability imposed by section 5151 of the Revised Statutes of the United States, imposing a liability upon a stockholder of a national bank, to the extent of the amount of his stock, for the debts, contracts, and engagements of such bank. The theory is, and must be, that payment of a dividend under the circumstances shown by the facts already stated did not pass the title, and that an action will lie as for money received to the use of the bank.

Neither can this suit be sustained as for a violation of section 5204, Id., which provides that:

"No association, or any member thereof, shall, during the time it shall continue its banking operations, withdraw or permit to be withdrawn, either in the forms of dividends or otherwise, any portion of its capital, * * * and no dividend shall ever be made by any association, while it continues its banking operations, to an amount greater than its net profits then on hand, deducting therefrom its losses and bad debts."

When the dividend complained of was declared and paid, the bank had ceased "its banking operations." It had gone into voluntary liquidation for the express purpose of returning its capital to its shareholders, after paying its debts. It was prohibited from engaging in banking operations after going into liquidation, and its officers and managers had no power or authority to bind its stockholders by any new operations or engagements whatever. Richmond v. Irons, 121 U. S. 27–60, 7 Sup. Ct. 788, et seq.

The suit can only be predicated upon the proposition that the capital of the bank was a trust fund for the payment of debts, and that any part of the trust fund so paid out in the way of dividends to the stockholders can be recovered back in an action at law of this kind, for the purpose of paying the debts of the bank. It is plain that, if this action will lie at all, it must lie for the recovery of the entire dividend received, regardless of whether the whole will be necessary to pay debts unpaid, and that like actions will lie against each stockholder who has received a dividend out of the capital stock.

The contention presented by the learned counsel for the receiver is that the capital stock of the bank constituted a trust fund set apart for the payment of its debts, and that no part of the capital of a corporation can be legally divided among the shareholders until all of the debts of the corporation have been paid, and that it is no justification, in law or equity, that the corporation was solvent when part of its capital was divided as a dividend, and that the dividend paid left the corporation still solvent. Upon these premises the deduction is drawn that the entire capital stock of a corporation must remain inviolate until every debt has been paid, and that every dividend paid out of capital, regardless of the solvency of the corporation, constitutes a debt due to the bank, in the same sense that a promissory note would, and that it becomes the duty of a receiver subsequently appointed to sue for and recover all capital so diverted, as plain common-law assets of the bank. Under the decisions of the courts of the United States, there is no solid foundation for the contention that the capital of a corporation which is solvent is a "trust fund" upon which there is any lien for the payment of corporate debts. The capital of a solvent corporation is as much the absolute property of the corporation as is the property of an individual. Neither a corporation nor an individual can so exercise the power of disposition over that which is possessed as to fraudulently defeat the just demands of creditors. But neither the individual nor the corporation can be said, in any accurate sense, to hold his or its property subject to any trust in favor of creditors. When,

however, the insolvency of a corporation is established, a condition arises which authorizes a court of equity, in view of the conditional liability of the assets to creditors and the equitable rights of stockholders, to treat the property as "in a condition of trust, first for the creditors, and then for the stockholders." Graham v. Railroad Co., 102 U. S. 148–161; Railway Co. v. Ham, 114 U. S. 587–594, 5 Sup. Ct. 1081; Hollins v. Iron Co., 150 U. S. 371–385, 14 Sup. Ct. 127; McDonald v. Williams, 174 U. S. 397–403, 19 Sup. Ct. 743, et seq. Thus, in Hollins v. Iron Co., supra, Justice Brewer, in discussing this theory of a "trust fund," said:

"In other words,—and that is the idea which underlies all these expressions in reference to 'trust' in connection with the property of a corporation,—the corporation is an entity, distinct from its stockholders as from its creditors. Solvent, it holds its property as any individual holds his,—free from the touch of a creditor who has acquired no lien: free, also, from the touch of a stockholder who, though equitably interested in, has no legal right to, the property. Becoming insolvent, the equitable interest of the stockholders in the property, together with their conditional liability to the creditors, places the property in a condition of trust, first for the creditors, and then for the stockholders. Whatever of trust there is arises from the peculiar and diverse equitable rights of the stockholders as against the corporation in its property, and their conditional liability to its creditors. It is rather a trust in the administration of the assets after possession by a court of equity, than a trust attaching to the property, as such, for the direct benefit of either creditor or stockholder. The officers of a corporation act in a fiduciary capacity in respect to its property in their hands, and may be called to an account for fraud, or, sometimes, even mere mismanagement in respect thereto; but, as between itself and its creditors, the corporation is simply a debtor, and does not hold its property in trust, or subject to a lien in their favor, in any other sense than does an individual debtor. That is certainly the general rule, and, if there be any exceptions thereto, they are not presented by any of the facts in this case. Neither the insolvency of the corporation, nor the execution of an illegal trust deed, nor the failure to collect in full all stock subscriptions, nor all together, gave to these simple-contract creditors any lien upon the property of the corporation, nor charged any direct trust thereon."

In McDonald v. Williams, heretofore cited, the suit was by a receiver of a national bank to recover a dividend paid to a stockholder wholly out of the capital of a going bank, though the stockholder believed it was paid out of profits; the bank being solvent at the time the dividend was declared and paid. The court unanimously held that a dividend paid under such circumstances could not be recovered, saying:

"The bank being solvent, although it paid its dividends out of capital, did not pay them out of a trust fund. Upon the subsequent insolvency of the bank and the appointment of a receiver, an action could not be brought by the latter to recover the dividends thus paid, on the theory that they were paid from a trust fund, and therefore were liable to be recovered back."

The question as to whether a recovery could have been had if the bank had been actually insolvent was reserved, the court saying:

"But we do not wish to be understood as deciding that the doctrine of a trust fund does in truth extend to a shareholder receiving a dividend, in good faith believing it is paid out of profits, even though the bank at the time of the payment be in fact insolvent. That question is not herein presented to us, and we express no opinion in regard to it. We only say that, if such a dividend be recoverable, it would be on the principle of a trust fund."

We express no opinion as to the effect of a fraudulent distribution of the assets of a corporation with the purpose of defeating its creditors; nor need we deal with the question of the legal right of the receiver to maintain this suit if the dividend had been paid or received in bad faith, or for a dividend paid and received in violation of section 5204, Rev. St., as in Finn v. Brown, 142 U. S. 56, 12 Sup. Ct. 136. The dividend sued for here was both paid and received in good faith; both the directors who declared it and the stockholder here sued believing that the bank was solvent, the assets being such as to justify this dividend. Neither is it shown that the payment of the 50 per cent. dividend was made when the bank was in fact insolvent, or that the payment reduced the bank to a condition of insolvency. Subsequently other dividends were paid, in which the defendant in error did not participate. From the showing of assets now on hand, and debts yet unpaid, it is indeed plain and obvious that the distribution made through the original 50 per cent. dividend of November, 1895, did not reduce the bank to its present probable condition of insolvency. The subsequent dividends are alone responsible for the present condition. The fact that this bank was in liquidation does not materially affect the situation. The corporation was still in absolute control of its assets, and its power of disposition was unaffected. Those in charge of the liqui-·' dation were charged with the duty of winding up the affairs of the bank, and applying the proceeds, first, to the payment of debts, and, second, to the distribution of the remainder among the shareholders. If the bank was not insolvent when this dividend was declared or paid, and the division of a portion of the assets did not reduce the bank to a condition of insolvency, on what theory can it be maintained that the bank, or a receiver subsequently appointed, could maintain an action at common law upon implied promises to return the dividend so paid ·and received? The distinction between this case and that of McDonald v. Williams, cited above, is that the dividend was confessedly paid out of capital, and received with knowledge of that fact. But in the case referred to the bank was a going concern, and prohibited by section 5204, Rev. St., from withdrawing any part of its capital for the purpose of paying dividends while it should "continue its banking operations." The directors who declared the dividend out of capital were said by the court to have rendered themselves liable under the statute, but the stockholder who received it was acquitted from liability to return same, though in fact paid out of capital, and though the bank subsequently became insolvent, because he did not receive it, knowing that it was paid in violation of the statute. Section 5204 has no application here, because this bank was not engaged in its ordinary banking operations, and was in voluntary liquidation. If this dividend was paid in good faith at a time when the assets were abundantly sufficient to justify such a return of capital without depriving existing creditors of a fund ample to pay their dividends, it is difficult, under the doctrine of the cases we have cited, to see any ground upon which the stockholder can be made to refund. But the equities are further complicated by the fact that this dividend, as well

as those subsequently made and paid, was paid with the knowledge and connivance of the Mecosta County Savings Bank. That bank now presents a claim for a debt created, pending liquidation, for alleged advances made in aid of liquidation. If the demand of this creditor be excluded, the undistributed assets are abundant to pay every claim which has been proven or preferred. These facts present both a question of equitable estoppel, and a question of the liability of a stockholder for an engagement entered into after going into liquidation. That a corporate creditor may by his acts estop himself from his right to attack a dividend cannot be denied. Cook, Corp. (4th Ed.) § 548; Brooks v. Brooks, 174 Pa. St. 519, 34 Atl. 205. So, where a creditor of a national bank received from the bank's president bills receivable, indorsed or guarantied by the bank, in settlement of his demand, it was held that a stockholder who had not consented to such guaranty could not be made liable in a proceeding against him under the double-liability provision of the national banking law, and that he was not precluded from going behind a judgment against the bank upon the indorsement. Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788. The ground of the decision was that the officers of a bank in liquidation had no authority to bind the bank by new contracts or engagements. But it is unnecessary to decide, and we do not decide, what would be the rights of either the savings bank or the receiver under a bill in equity against the stockholders who received the dividend paid in November, 1895. The considerations we have mentioned lead us to the conclusion that the plaintiff in error cannot, in an action at law, recover dividends paid by a liquidating bank which was solvent when the dividend was declared and paid, although paid wholly out of capital, if paid and received in the honest belief that the assets justified such payment. The case of McDonald v. Williams, and the cases preceding that, leave no room to doubt but that in the absence of fraud, or bad faith equivalent to fraud, the condition of trust necessary to give to a corporate creditor, or a receiver representing both the corporation and creditors, the right to follow and compel the return of the dividends paid out of capital, depends upon, and arises out of, an established insolvency. The right when insolvency is shown to have existed is an equitable right, and will not support a purely legal action. If we assume, therefore, that insolvency existed in fact when this dividend was paid, the remedy,—there being no fraud or bad faith,— where it is sought to compel the return of such dividend, is in equity, and not at law. There are few instances in which suits at law have been resorted to for the purpose of recovering dividends paid in derogation of the rights of creditors. But four cases have come under our observation, in all of which the action failed upon the ground that an action at law would not lie. Vose v. Grant, 15 Mass. 505–522; Spear v. Grant, 16 Mass. 9–15; McLean v. Eastman, 21 Hun, 312; Paschall v. Whitsett, 11 Ala. 472. In Vose v. Grant, the court, after a consideration of the difficulties in the way of a legal action by a creditor to reach dividends improperly paid out of capital stock, leaving nothing for payment of debts, said:

"This is one of the numerous cases, which are constantly occurring, which show the necessity of a court of chancery for the complete distribution of justice among the people."

In McLean v. Eastman, 21 Hun, 312–314, the action was by an assignee in bankruptcy of an insolvent banking corporation, and was brought for the purpose of recovering a dividend paid out of capital at a time when the bank was insolvent. This condition was unknown to the stockholders who received this dividend, supposing it to be paid out of profits. Neither were the officers of the bank aware of the insolvent condition, unless chargeable in law with such knowledge. Upon this state of facts the plaintiff was nonsuited in the court below. The supreme court affirmed the judgment, saying:

"The appellant contends that he has the right to reach the money in the hands of the defendants, as a part of the assets of the bank applicable to the payment of its debts, upon the principle that the assets of a corporation are a trust fund for the payment of its debts, and its creditors have a lien thereon, and the right to priority of payment over its stockholders. But the lien of creditors of an insolvent corporation upon its assets in the hands of others (independently of rights given by statute) is a purely equitable lien, and can only be enforced in an equitable proceeding. The cases of Bartlett v. Drew, 57 N. Y. 587, Osgood v. Laytin, *42 N. Y. 521, and Van Cott v. Van Brunt, 2 Abb. N. C. 283, cited by the appellant, were actions in equity. In the Case of Bartlett, the action was in the nature of a creditors' bill, brought by a single judgment creditor, after the return of an execution unsatisfied, to reach a sum received by a stockholder of a corporation on a division of its assets before all its debts were paid. The action could not have been maintained if there had been an adequate remedy at law. The present action is what would have been termed an 'action for money had and received,' under the system of pleading which was superseded by the Code of Procedure. The only relief sought is the recovery of the specific sum of money which was paid by the bank to the defendant's testator. The difficulty in the way of recovering it in a strictly legal action is that, as between the bank and the stockholder, the payment was made in good faith, according to the conceded facts, and the stockholder acquired a valid title to the money, as against the bank. A court of law cannot go beyond the parties to the transaction, and treat the payee as the recipient of moneys in trust for the benefit of the creditors of the bank. It is not alleged in the complaint, nor does the scope of the action permit an inquiry, as to whether the creditors represented by the assignee were creditors at the time of the transaction; and, if not, they have no interest in the money sought to be recovered. The inadequacy of a court of law to give relief in such a case was forcibly commented on in Vose v. Grant, 15 Mass. 505, and Spear v. Grant, 16 Mass. 9."

The case of Bartlett v. Drew, 57 N. Y. 587, has been cited and pressed upon us as an authority in point. But that was an equitable suit, and the jurisdiction maintained upon that ground, and the cases of Vose v. Grant, 15 Mass. 505, and Spear v. Grant, 16 Mass. 9, were commented on and distinguished; and in the case of McLean v. Eastman, cited above, the supreme court distinguished Bartlett v. Drew, upon the ground that the case was one of equitable cognizance. The ancient and well-established distinction between legal and equitable rights and remedies still exists in courts of the United States. There was no error in instructing the jury to find for the defendant in error, and the judgment is accordingly affirmed.