RATCLIFF v. CLENDENIN.

(Circuit Court of Appeals, Eighth Circuit. February 24, 1916. On Motion for Rehearing, May 1, 1916.)

No. 4466.

*(Syllabus by the Court.)*

1. BANKRUPTCY ⬅⬅302(1)—ADMINISTRATION OF ESTATE—ACTIONS BY TRUSTEE—PLEADING.

Averments, in a suit in equity by the trustee in bankruptcy of a corporation against a stockholder to recover dividends paid to the latter, that the creditors represented by the trustee held claims incurred by the corporation when the funds of the company were paid over to the stockholder without any consideration, that the corporation was insolvent when those payments were made, and the stockholder knew it, that the insolvency was unknown to the creditors, and that other unknown sums had been misappropriated to the benefit of the stockholder in the same way, stated a complete cause of action in equity for the enforcement of the trust, the discovery of the unknown amounts, and the recovery by the trustee of both the known and the unknown sums.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 456; Dec. Dig. ⬅⬅302(1).]

2. CORPORATIONS ⬅⬅80(10)—STOCKHOLDERS—SUBSCRIPTIONS—RESCISSION OF PURCHASE.

A stockholder who is induced by fraud to purchase the stock of a corporation, and who for years, while the corporation is a going concern and is incurring debts to creditors which still remain unpaid, receives dividends or income from his purchase of the stock, is estopped, after the corporation becomes insolvent and is adjudged a bankrupt, from rescinding his purchase.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 262; Dec. Dig. ⬅⬅80(10).]

3. CORPORATIONS ⬅⬅153—STOCKHOLDERS—RECOVERY OF DIVIDENDS—SUBSEQUENT CREDITORS.

Creditors whose claims were incurred by the corporation subsequent to the payment of dividends sought to be recovered of a stockholder have no equity therein superior to the equity of the stockholder who received the payment in good faith, and they may not recover of him.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 579, 580; Dec. Dig. ⬅⬅153.]

4. CORPORATIONS ⬅⬅537—"SOLVENCY"—TEST—ABILITY TO PAY PAR VALUE OF STOCK IMMATERIAL.

The test of the "solvency" of a corporation is the sufficiency of its assets and its ability to pay its liabilities therewith, and the sufficiency of its assets and its ability to pay its stockholders the par value of their stock in addition to the payment of its debts are irrelevant to the issue of its solvency.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2150; Dec. Dig. ⬅⬅537.

For other definitions, see Words and Phrases, First and Second Series, Solvency.]

5. CORPORATIONS ⬅⬅544(2)—TRUST FOR CREDITORS AND STOCKHOLDERS WHEN INSOLVENT—NONE WHILE SOLVENT.

A solvent corporation, like a solvent individual, holds its property free from any enforceable trust or equitable lien in favor of its creditors. It

---

⬅⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

is only when it becomes insolvent that such a trust or lien in favor, first of creditors, and second of stockholders, attaches to its property.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2162; Dec. Dig. &#9758;544(2).]

6. CORPORATIONS &#9758;425(5)—POWERS AND LIABILITIES—REPRESENTATION BY OFFICER—ACQUIESCENCE IN THE APPARENT AUTHORITY OF SINGLE OFFICER.

Where, without challenge by officers or stockholders of a corporation, an officer thereof has been permitted by the common consent of all other officers and stockholders, and by their acquiescence, to exercise, at his will, all the powers of the corporation, and to conduct all its business for years, they and the corporation are estopped from denying, to the prejudice or injury of innocent parties who have relied on the apparent authority of such an officer to act for and as the corporation, that he had the actual authority so to do.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1700; Dec. Dig. &#9758;425(5).]

7. CORPORATIONS &#9758;153—DIVIDENDS WRONGLY PAID—RIGHT OF ACTION BY TRUSTEE.

A trustee in bankruptcy cannot recover dividends or income paid by a corporation, not at all out of profits, but entirely out of capital, to a stockholder as income on his investment in the stock when the corporation was not insolvent, was a going concern when the payments were made, and the stockholder received them in good faith in the full belief that the corporation was solvent and prosperous and that he was lawfully entitled to the payments.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 579, 580; Dec. Dig. &#9758;153.]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit in equity by John W. Clendenin, trustee in bankruptcy for the Nevling Elevator Company, against J. M. Ratcliff. From a decree for complainant, defendant appeals. Reversed and remanded, with instructions to render decree of dismissal.

T. A. Noftzger, of Wichita, Kan. (George L. Hay, of Kingman, Kan., on the brief), for appellant.

Charles G. Yankey, of Wichita, Kan. (R. R. Vermilion, Earle W. Evans, J. G. Carey, R. L. Holmes, and W. E. Holmes, all of Wichita, Kan., on the brief), for appellee.

Before SANBORN and CARLAND, Circuit Judges, and TRIEBER, District Judge.

SANBORN, Circuit Judge. John W. Clendenin, trustee in bankruptcy of the Nevling Elevator Company, which was adjudged bankrupt on August 6, 1912, brought a suit in equity and recovered a decree for $4,500, interest thereon, and costs against J. M. Ratcliff for amounts paid to him as one of its stockholders by the Elevator Company in 1909, 1910, and 1911.

[1] The first specification of error is that the court overruled Ratcliff's demurrer to the complaint on the ground that it disclosed the fact that he had an adequate remedy at law. But the suit was brought against Nevling, the president and manager of the corporation, and also against Ratcliff. The trustee alleged that some of the creditors

who have claims against the estate of the bankrupt were continuously its creditors during the years 1909, 1910, and 1911, that the corporation was continuously indebted during those years to an amount in excess of $35,000 and was continuously impairing its capital, that the creditors were ignorant of these facts and believed it to be solvent and prosperous, while it was in truth insolvent for years prior to 1912, that Nevling and Ratcliff, who were stockholders and directors of the corporation with knowledge of its insolvency, conspired together to take the funds of the corporation and to pay them to Ratcliff without any consideration, that pursuant to that conspiracy they paid over to him out of the funds of the corporation $4,500 during the years 1909, 1910, and 1911, and that at other times they paid out of the funds of the corporation to Ratcliff additional and further sums the amounts of which were unknown to the plaintiff, and the trustee prayed that the defendants might be required to set forth what sums belonging to the corporation had been transferred to Ratcliff, and to account for and pay over these sums to the trustee. The property of an insolvent corporation constitutes a trust fund held by its officers, first for its creditors, and second for its stockholders, and the execution of a trust and the following and administering of trust funds are immemorial heads of equity jurisprudence. The allegations that the existing creditors still hold claims which were owing to them when the funds of the corporation were paid over to Ratcliff without consideration, that the corporation was insolvent when these payments were made and Ratcliff knew it, that the insolvency was unknown to the creditors, and that other unknown sums had been misappropriated to the benefit of Ratcliff in the same way, stated a complete cause of action in equity for the enforcement of the trust, the discovery of the unknown sums, and the recovery by the trustee of both the known and the unknown sums. There was no error in overruling the demurrer to this complaint. Hayden v. Thompson, 71 Fed. 60, 62, 63, 17 C. C. A. 592, 594, 595.

[2] The second specification is that the court erroneously struck out the counterclaim of the defendant Ratcliff. Ratcliff made a separate answer. He denied the alleged conspiracy, denied the averments of the complaint as to the existence and continuance of the claims of the creditors of the corporation, denied that he was ever a director or officer of the Elevator Company, denied that he knew anything about its insolvency, or the impairment of its capital, or its financial condition, prior to March, 1912, and alleged that he always supposed and believed it to be solvent and prosperous; and he alleged in his answer that this was his relation to the corporation. Nevling was its president and general manager; Ratcliff was a farmer and stockman, who knew nothing about the financial condition of this or other corporations, and who did not know how to examine their financial condition. Nevling told him that the Elevator Company was solvent and prosperous; that if he would put $25,000 into it he (Nevling) and the Elevator Company would guarantee him interest on it at 10 per cent. per annum; that in reliance upon these representations he paid into the corporation, on or about July, 1908, $25,000, and received for it certificates for 250 shares of its stock, of the par value of $100 per share; and

that he received the sums alleged in the complaint, aggregating $4,-500, during the years 1909, 1910, and 1911, in payment of the interest or income on his investment in good faith, in the belief that the Elevator Company was solvent and prosperous, and that in law and equity he was entitled to receive these payments.

His counterclaim consisted of a restatement of his investment of his $25,000 in reliance upon the statements and representations of Nevling, an averment that he first learned of the insolvency of the Elevator Company in March, 1912, an offer to bring into court and surrender his certificates of stock and his interest in the capital stock of the company, and a prayer for an equitable lien on the assets of the Elevator Company for the difference between the $4,500 which he received from it and the $25,000 he paid to it. But he bought his stock in July, 1908, he first discovered the insolvency of the Elevator Company in March, 1912, that company was adjudged bankrupt on August 6, 1912, and the first appearance of his attempt to rescind his purchase of his stock in July, 1908, was in March, 1913, about 4½ years after his purchase. Meanwhile the Elevator Company had incurred many of the claims now represented by the trustee. Ratcliff's attempt to rescind his purchase of his stock, though induced by the fraud of the Elevator Company, or of its president, comes too late, and there was no error in striking his counterclaim from his answer. A stockholder who is induced by fraud to purchase the stock of a corporation, and who for years, while the corporation is a going concern and is incurring debts to creditors, which still exist, receives dividends or income from his purchase of the stock, is estopped, after the corporation becomes insolvent, has ceased to be a going concern, and is adjudged a bankrupt, from rescinding his purchase of the stock against a protest of its creditors. Upton v. Tribilcock, 91 U. S. 45, 23 L. Ed. 203; Webster v. Upton, 91 U. S. 65, 23 L. Ed. 384; Sanger v. Upton, 91 U. S. 56, 23 L. Ed. 220; Chubb v. Upton, 95 U. S. 665, 667, 24 L. Ed. 523; Scott v. Deweese, 181 U. S. 202, 213, 21 Sup. Ct. 585, 45 L. Ed. 822; Lantry v. Wallace, 182 U. S. 536, 548, 549, 554, 21 Sup. Ct. 878, 45 L. Ed. 1218; Rand v. Columbia National Bank, 94 Fed. 349, 351, 36 C. C. A. 292; Scott v. Latimer, 89 Fed. 843, 33 C. C. A. 1.

[3] Finally, it is specified as error that the court rendered a decree against Ratcliff for the $4,500 which he received from the Elevator Company, interest upon it, and the costs of the suit. This was a suit in equity by the trustee in bankruptcy of the Elevator Company to recover this $4,500 of Ratcliff, a stockholder, in the right of creditors of the corporation who held claims against the corporation which were incurred before that $4,500 was paid out, on the theory that this $4,500 was money of the insolvent corporation which was held by its officers in trust for its creditors when it was paid to Ratcliff, and that Ratcliff knew this fact and procured the payment of this money to him without giving any consideration therefor. Facts essential to this cause of action which the trustee pleaded were, first, that there were creditors of the Elevator Company represented by the trustee who held claims allowed against the estate of the bankrupt which were incurred by the corporation before at least some of this $4,500 was paid over to Ratcliff, for creditors having claims which

accrued after those payments have no equity in any of this $4,500 superior to the equity of Ratcliff. Hamilton v. Menominee Falls Quarry Co., 106 Wis. 352, 81 N. W. 876, 879. But the answer of Ratcliff denied that there were any claims of any creditors which accrued before all of the $4,500 was paid over to him by alleging that he had no knowledge or information sufficient to form a belief on that subject. The burden, therefore, was on the plaintiff to prove its averment of this essential fact and it made no proof thereof whatever. In the second place, the trustee averred that the Elevator Company was insolvent when this $4,500 was paid, and that this money was a fund held in trust for the creditors of the corporation; that Ratcliff knew this fact and obtained the money without any consideration. Ratcliff denied these averments in his answer, and the burden was on the plaintiff to prove them, and there is no substantial proof of any of them. On the other hand, the evidence established these facts:

The Nevling Elevator Company was a corporation owned and operated by a single man, Nevling, who was the president and manager thereof, and who conducted all its affairs without any action of any board of directors, or of any other person, except those persons whose action he directed. He continued in absolute control and management of its affairs from the inception of the transaction related in this suit in July, 1908, until the adjudication in bankruptcy in August, 1912. About July 7, 1908, he induced Ratcliff to pay into the corporation $25,000 and to take 250 shares of its stock by representing to him that the corporation was solvent and prosperous, and by either stating, as Nevling testifies, or by guaranteeing by the corporation and by Nevling, as Ratcliff testifies, that Ratcliff should receive from this investment interest at 10 per cent. per annum on his $25,000. In payment of this interest or income on Ratcliff's investment Nevling paid over to him out of the funds of the corporation the $4,500 here in issue in the following amounts: On October 13, 1909, $1,500; on January 24, 1910, $1,000; on July 3, 1911, $1,000; on July 21, 1911, $500; on August 26, 1911, $500. During the time of these payments the capital of the corporation varied from about $31,000 to $41,000 On June 30, 1907, the assets of the company were $58,675, its liabilities $38,908.73, its assets exceeded its debts $19,766.33, and its capital was impaired $11,933.67; on June 30, 1908, its assets were $47,257.99, its liabilities $33,165.87, its assets exceeded its debts $14,092.12, and its capital was impaired $21,107.88; on July 6, 1909, its assets were $48,142.63, its debts were $27,557.07, its assets exceeded its debts $20,585.56, and its capital was impaired $20,414.14; on June 30, 1910, its assets were $57,922.79, its liabilities $45,368.71, its assets exceeded its liabilities $12,554.08, and its capital was impaired $28,445.92; on June 30, 1911, its assets were $58,454.28, its liabilities were $54,362.25, its assets exceeded its liabilities $4,092.03, and its capital was impaired $36,907.97. During all the time until its adjudication in bankruptcy the corporation was a going concern. At the first annual meeting of the corporation after Ratcliff made his investment Nevling made him a director of the corporation, but Ratcliff was not present, did not know that he was made a director until late in the year 1912, and never

accepted the office, or acted as a director or other officer of the corporation. During all the time he was receiving the $4,500 he believed the Elevator Company to be solvent and that he was lawfully entitled to the payments he received. He never received any notice or knowledge to the contrary until months after the last payment to him, and he received all the payments in good faith.

[4] The result of these established facts is that, as the presumption was that the company, which was a going concern, was solvent, the plaintiff failed to prove that it was insolvent when any part of the $4,500 was paid over to Ratcliff, for the test of the insolvency of a corporation is the sufficiency of its assets and its ability to pay its debts, and the sufficiency of its assets and its ability to pay its stockholders the par value of their stock in addition to the payment of the debts of the corporation are irrelevant to the issue of insolvency. Hamilton v. Menominee Falls Quarry Co., 106 Wis. 352, 81 N. W. 876, 878: Banta v. Hubbell, 167 Mo. App. 38, 150 S. W. 1089, 1092; State of Kansas v. Myers, 54 Kan. 206, 217, 38 Pac. 296.

[5] As the plaintiff failed to prove that the Elevator Company was insolvent when the $4,500 was paid to Ratcliff, it failed to establish the fact that that sum or any part of it was ever charged with any enforceable trust or equitable lien in favor of any creditor of the corporation or in favor of the trustee in bankruptcy. A solvent corporation, like a solvent individual, holds its property free from any enforceable trust or equitable lien in favor of its creditors. It is only when it becomes insolvent that such a trust or lien in favor, first of its creditors, and second of its stockholders, attaches to its property. Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 383, 385, 14 Sup. Ct. 127, 37 L. Ed. 1113; McDonald v. Williams, 174 U. S. 397, 403, 19 Sup. Ct. 743, 43 L. Ed. 1022; Lawrence v. Greenup, 97 Fed. 906, 908, 909, 38 C. C. A. 546, 549; Great Western Min. & Mfg. Co. v. Harris, 128 Fed. 321, 331, 63 C. C. A. 51, 61; New Hampshire Sav. Bank v. Richey, 121 Fed. 956, 960, 58 C. C. A. 294, 298. So it was that the plaintiff failed to prove any of the essential elements of the cause of action he pleaded, and the record discloses no equity in his favor which entitles him to recover of the defendant.

[6] Counsel for the trustee, however, argue that there was no formal declaration of a dividend, that no other stockholder had an income like that of the defendant paid to him on his investment, that section 1741 of the General Statutes of Kansas of 1909 provides that the directors of a corporation shall "declare and make such dividends of the profits from the business of the corporation as they shall deem expedient, or as the by-laws may prescribe," that this is in legal effect to prohibit and the general law of the community forbids the payment of dividends out of capital, that the capital of the Elevator Company was impaired when the payments were made to Ratcliff, that there were no profits, and that for these reasons the payment of the $4,500 was unlawful. The answers to this contention are many and conclusive. If the contention stated a cause of action, it was a cause of action that was neither pleaded nor tried in the court below. It does not state a cause of action in favor of any creditor whom the

trustee represents, because it fails to plead that any such creditor has any claim which accrued before the $4,500 was fully paid, or that the company was insolvent when that payment was made. Hence it discloses no injury to and raises no equity in favor of any creditor superior to the evident and persuasive equity of the defendant. If any injury resulted to any one interested in the property of the corporation when the payment was made it must have been to Nevling, practically the only other stockholder, and he certainly has no equity in this $4,500 superior to that of Ratcliff, and, if he has, the trustee does not hold that equity and does not represent Nevling's right to enforce it. Nor is it material that there was not a formal declaration or resolution of dividend, because stockholders and officers of this corporation by common consent to and acquiescence in the exercise of all the powers of the corporation, and the conduct of all the business of the corporation by Nevling for four years, had estopped themselves from challenging his authority to make the agreement with Ratcliff and to pay him the $4,500 pursuant thereto, whether that payment was a payment of interest on his investment or of a dividend on his stock. Where, without challenge by officers or stockholders of a corporation, an officer thereof has been permitted by the common consent of all other officers and stockholders, and by their acquiescence, to exercise all the powers of the corporation, and to conduct all its business for years, they and the corporation are estopped from denying to the prejudice and injury of innocent parties who have relied on the apparent authority of such an officer to act for and as the corporation, that he had the actual authority so to do. Jenson v. Toltec Ranch Co., 174 Fed. 86, 89, 90, 98 C. C. A. 60, 63, 64; Galbraith v. First Nat. Bank of Alexandria, Minn., 221 Fed. 386, 391, 137 C. C. A. 194, 199.

[7] And, finally, the general principles of equity jurisprudence forbid the recovery of this $4,500 of Ratcliff, because his equity in it is superior to that of the trustee or of any of the creditors whom he represents. Ratcliff invested his $25,000 in the Elevator Company in good faith, in the justifiable belief that the corporation, which was a going concern, was solvent and prosperous, and that he should receive from it an income of 10 per cent. per annum on his investment. The corporation continued to be a going concern, apparently solvent and prosperous, until more than six months after the last of the $4,500 was paid to Ratcliff. He received the payments in good faith, without notice that they were wrongfully made, and in the full belief that whether they were interest or dividends he was lawfully entitled to them. "A court of equity can act only on the conscience of a party. If he has done nothing that taints it no demand can attach upon it so as to give any jurisdiction." Boone v. Chiles, 10 Pet. 177, 210, 9 L. Ed. 388. Ratcliff has done nothing that taints his conscience and no demand attaches upon it.

Where equities are equal the defendant prevails. Ratcliff was induced by Nevling to put $25,000 into the Elevator Company, and, in any event, can receive nothing on account of that investment but the $4,500 which has been paid to him as income. He must lose more

than $20,000. There is no proof that any creditor has any such equity. A trustee in bankruptcy cannot recover dividends or income paid by a corporation, not at all out of profits, but entirely out of capital, to a stockholder as income on his purchase of the stock, when the corporation was not insolvent and was a going concern at the time of the payments, and the stockholder received them in good faith in the full belief that the corporation was solvent and prosperous, and that he was lawfully entitled to the moneys he obtained. McDonald v. Williams, 174 U. S. 397, 398, 407, 408, 19 Sup. Ct. 743, 43 L. Ed. 1022; Lawrence v. Greenup, 97 Fed. 906, 909, 38 C. C. A. 546, 549; Great Western Min. & Mfg. Co. v. Harris, 128 Fed. 321, 332, 63 C. C. A. 51, 62.

Let the decree below be reversed, and let the case be remanded to the court below, with instructions to render a decree of dismissal of the complaint on the merits.

### On Motion for Rehearing.

Counsel for the trustee, Clendenin, present a motion for a writ of certiorari to add to the transcript in this cause a record to the effect that there were creditors of the Nevling Elevator Company before and at the time that the payments were made to Ratcliff. If, however, this evidence were produced and made a part of the record in this court, the second ground for the decision, and that was the main ground, that the trustee averred that the Elevator Company was insolvent when this $4,500 was paid, and that this money was a fund held in trust for the creditors of the corporation, that Ratcliff knew this fact and obtained the money without any consideration, and that Ratcliff denied these averments, and the evidence established the fact that the company was not insolvent, and that Ratcliff did not know its condition when he received the statements, would still be fatal to the motion for a rehearing in this case.

For this reason the motion for a writ of certiorari must be denied, and because the second ground for the decision, which is stated above, is still conclusive, the motion for a rehearing is denied.